In re MUSHROOM TRANSPORTATION COMPANY, INC.

In re PENN YORK REALTY COMPANY, INC., Leazit, Inc., Robbey Realty, Inc. and Trux Enterprises, Inc., Debtors.

Bankruptcy No. 85–02575G.

United States Bankruptcy Court, E.D. Pennsylvania.

Oct. 21, 1987.

Robert A. Kargen, Lesser & Kaplin, P.C., Blue Bell, Pa., for movant, M & M Trucking Co., Inc.

Christopher G. Kuhn, Pincus, Verlin, Hahn & Reich, Philadelphia, Pa., for debtor, Mushroom Transp. Co., Inc.

Paul Silverstein, Booth, Marcus and Pierce, New York City, for Official Committee of Unsecured Creditors.

Bonnie Fatell, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for Continental Bank.

## OPINION

BRUCE FOX, Bankruptcy Judge:

■ M & M Trucking Company ("M & M") which owned a trucking terminal rented by the debtor, Mushroom Transportation Co., has filed a motion seeking a determination that it holds an allowed administrative claim in the amount of $53,064.82.[1] The committee of unsecured creditors ("creditors' committee") vigorously objects to much of the asserted administrative claim for a variety of reasons which will be addressed below. While the debtor is a party to the dispute, it is liquidating its assets and has not taken a very active role in this litigation, although it did file an answer to M & M's motion requesting that the relief sought be denied.[2] After considering the evidence presented as well as the legal arguments raised by the parties, I conclude that M & M is entitled to the administrative priority claim it seeks.

---

1. The motion also sought relief from the automatic stay as well as contempt. Relief from the stay was granted by agreement of all parties and so no longer is an issue. Contempt is inappropriate since the estate has the capacity and willingness to comply with this determination of M & M's rights as an administrative creditor, and the failure to pay was due to the debtor's interpretation of § 365, rather than to its obduracy.

2. As this dispute involves competing creditors seeking funds from the liquidation of the debtor's estate, the debtor accurately perceives itself as a bystander to this litigation—albeit an interested one. *See* 11 U.S.C. § 1129(a)(9).

## I.

The parties presented evidence at two hearings from two witnesses, as well as brief documentary evidence. Upon review, I make the following findings of fact and conclusions of law:

1. The debtor, Mushroom Transportation Co., Inc., filed a voluntary petition in bankruptcy under chapter 11 on June 24, 1985. This bankruptcy case was ordered jointly administered with the cases of Penn York Realty Co., Inc., Leazit, Inc., Robbey Realty, Inc., and Trux Enterprises, Inc.

2. Prior to filing for bankruptcy, the debtor operated a trucking company with terminals in various locations around the country. Among its terminals was one located in Rochester, N.Y. owned by M & M and leased to the debtor.

3. The debtor's lease of the M & M terminal began in October 1982 for a two year period ending October 31, 1984. Monthly rental payments were set at $3,800.00. The lease contained two discrete one year option provisions; the debtor exercised the first year option in October 1984 and thus the lease term was extended until October 31, 1985.

4. Subsequent to filing its bankruptcy petition, Mushroom decided to continue its trucking operations from the Rochester terminal, (as well as from some other terminals), as debtor in possession.

5. The debtor's decision to operate from its Rochester terminal was made by its Executive Vice-President, Michael C. Arnold and the decision was communicated to debtor's counsel. Counsel then began negotiations with counsel for M & M to assume the lease of the Rochester terminal.

6. At the time Mushroom's bankruptcy petition was filed, it was in default of its lease agreement with M & M as follows:
   (1) It owed $17,727.88 for unpaid taxes for 1984/1985;
   (2) It owed $22,084.86 for other unpaid tax obligations;
   (3) It owed $19,000.00 in unpaid rental payments.

7. On July 24, 1985, the debtor filed a motion to assume the unexpired lease with M & M. Either before or after the filing of this motion, counsel for the creditors' committee became involved in the debtor's negotiations to assume its lease with M & M. A hearing on the debtor's request to assume the lease was originally scheduled for August 21, 1985. However, as negotiations between the various parties were not complete by that date (or other dates set), the parties requested, and were granted, multiple postponements of this hearing.

8. Among M & M's chief concerns was that the debtor would pay all prepetition defaults if it were to assume its lease. Among the creditors' committee's chief concerns was that the debtor, in assuming the lease, would not create an irrevocable administrative expense claim for the entire term of the extended lease. M & M also insisted that the monthly rental, effective November 1, 1985, be increased to $4,000.00 per month. Orally, the debtor acceded to this demand.

9. M & M prepared an addendum to the lease stating that the monthly rental would be increased by $200.00 per month. This addendum was sent to Mr. Arnold but it was never signed and returned to M & M.

10. The three parties reached an agreement regarding the debtor's assumption of the M & M lease which was submitted to this court in the form of a consent order. That order was signed by this court on November 5, 1985, and stated as follows:

AND NOW, this 5th day of November, 1985, upon consideration of the Motion of Debtor to Assume Unexpired Lease Agreement with M & M Trucking Company, Inc., and after Notice and a hearing, and it appearing that the Debtor, M & M Trucking Company, Inc., and the Creditors Committee have consented to the entry of this Order, it is

1. ORDERED that the Debtor is hereby authorized to assume the unexpired lease agreement with M & M Trucking Company, Inc., dated October 21, 1982, and as amended October 21, 1985, with respect to the lease of a truck terminal facility located at 864 Driving

Park Avenue, Rochester, New York; it is further

2. ORDERED that the Debtor is hereby directed to pay the current monthly rental obligations in the amount of $4,000.00 per month commencing November 1, 1985, and ending October 31, 1986, pursuant to the addendum to the lease agreement; it is further

3. ORDERED that the Debtor is hereby directed to pay to M & M Trucking the following amounts to cure the lease defaults.

A. The sum of $17,727.88, said amount representing unpaid 1984/1985 city/school tax payable by the Debtor pursuant to the lease, said sum to be paid to M & M Trucking Company no later than November 1, 1985.

B. The sum of $41,064.82, said amount representing the balance of pre-petition lease defaults, including rental payments payable by the Debtor in the amount of $19,000.00; and, unpaid tax obligations of the Debtor under the lease in the amount of $22,-064.82; said sum of $41,064.82, to be paid by the Debtor in four (4) equal monthly installments of $10,266.21, the first payment to be paid by the Debtor to M & M Trucking Company no later than December 1, 1985, and continuing thereafter monthly until paid in full;

C. An unliquidated sum representing all accrued interest and penalty on the unpaid taxes payable by the Debtor pursuant to the lease for the period subsequent to November 30, 1985, said sum to be paid no later than April 1, 1986.

4. ORDERED that in the event of the conversion of the debtor's case to a case under Chapter 7 of the Bankruptcy Code, or the liquidation of the Debtor under any Chapter of the Bankruptcy Code, at any time subsequent to the above payments, or in the event of a default under the lease subsequent to the date of this Order:

A. the Administrative Claim of M & M Trucking Company, Inc. shall be limited to the total amount of the post-petition sums accruing under the lease agreement due to Debtor's possession of the premises; and

B. The unsecured Claim of M & M Trucking Company, Inc. shall be limited to the lesser of: the rent remaining under the lease, or, the rent due under the lease for a period of one (1) year.

No appeal from the order was taken.

11. Despite the entry of this order, the debtor made no monthly payments to M & M beginning with the payment due November 1, 1985 under paragraph 2. However, the debtor did pay $17,727.88 to M & M, as set forth in paragraph 3(a) of the November 5, 1985 order, although this payment was untimely. No other payments were made by Mushroom to M & M.

12. The debtor in possession ceased operating approximately January 10, 1986 and vacated possession of the M & M terminal on January 24, 1986.

M & M seeks a declaration that it holds an administrative claim in the amount of $53,064.82 representing $41,064.82 in unpaid prepetition liabilities which were to be cured according to the schedule set out in the November 5, 1985 consent order, and $12,000.00 representing the rental payments due for three months of usage by the debtor of the Rochester N.Y. terminal subsequent to October 31, 1985. As I understand the parties' respective positions, the creditors' committee concedes the propriety of the $12,000.00 administrative expense claim; moreover, M & M recognizes that it holds only a general unsecured claim for unpaid rental payments due subsequent to January 31, 1986. The heart of this dispute is whether the unpaid prepetition debt is now an administrative expense claim.

## CONCLUSIONS OF LAW

1. The debtor assumed the M & M lease upon entry of this court's order dated November 5, 1985.

2. The assumption of the lease transformed the M & M prepetition claim into an administrative expense claim.

3. M & M did not waive its administrative claim for the prepetition liability by consenting to the order of November 5, 1985.

## II.

As set forth in the creditors' committee post-trial memorandum, at 2–3, the committee offers three reasons for disputing M & M's administrative claim. It argues that: there was no lease assumption because the lease expired prior to the order of November 5, 1985 and thus could not be assumed; the debtor's failure to cure the defaults as required by 11 U.S.C. § 365(b)(1) prevented the lease from being assumed; and M & M limited its administrative expense claim by its consent to the November 5, 1985 order. In order to explain why I disagree with each of the committee's arguments, I must place them in the context of 11 U.S.C. § 365.

Section 365 is one of the more complicated code provisions and has generated considerable litigation and much discussion and analysis. Essentially, this section recognizes that unexpired leases [3] may represent a valuable asset of the estate. Building upon its ancestor, section 70(b) of the Bankruptcy Act of 1938, former 11 U.S.C. § 110(b) (repealed 1978), and decisional interpretations of this provision, section 365 sets forth a federal substantive right of a debtor in possession [4] to assume an unexpired lease when it reasonably believes such assumption will benefit the estate and its ability to reorganize, or to reject the lease when rejection is in its best interests. *See generally* Ehrlich, *The Assumption and Rejection of Unexpired Real Property Leases Under the Bankruptcy Code—A New Look*, 32 Buffalo L.Rev. 1 (1983) ("Ehrlich"). The standard for reaching this decision is the "business judgment" of the debtor in possession. *Group of Institutional Investors v. Chicago, Milwaukee St. Paul & Pacific Railroad*, 318 U.S. 523,

63 S.Ct. 727, 87 L.Ed. 959 (1943); *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir.1985):

> As long as assumption of a lease appears to enhance a debtor's estate, court approval of a debtor-in-possession's decision to assume the lease should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code.

(quoting *Allied Technology, Inc. v. R.B. Bronemann & Sons*, 25 B.R. 484, 485 (Bankr.S.D.Ohio 1982)).

In addition to establishing the federal substantive right to assume or reject, section 365 establishes procedures for exercising this decision, requires court approval for assumption, *see e.g.*, *In re Walat Farms, Inc.*, 69 B.R. 529, 533 (Bankr.E.D. Mich.1987); *In re Multech Corp.*, 47 B.R. 747 (Bankr.D.Iowa 1985); 2 *Collier on Bankruptcy* ¶ 365.03, at 365–15 (15th ed. 1987), sets forth time periods within which a decision must be made, and also declares various substantive rights held by the non-debtor parties to these leases, all of which are designed, (at least in part), to balance the competing interests held by non-debtors and debtors.

■ If a lease is rejected, as set forth in § 365(a), all prepetition defaults constitute an unsecured claim against the estate. 11 U.S.C. § 365(g)(1). *Accord N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 531, 104 S.Ct. 1188, 1198, 79 L.Ed.2d 482 (1984); *In re Robinson Truck Line, Inc.*, 47 B.R. 631 (Bankr.N.D.Miss.1985); *Matter of Hearth & Hinge, Inc.*, 28 B.R. 595 (Bankr.S.D.Ohio 1983); *In re Marple Publishing Co.*, 20 B.R. 933 (Bankr.E.D.Pa.1982). The postpetition use of the leased premises, prior to rejection, will create a claim for "administrative rent"—that is, an administrative claim for compensation based upon the debtor's use of the leased premises, which is presumptively set at the rental estab-

---

3. Since this matter concerns an unexpired lease, references in this opinion to section 365 will be limited to such leases although § 365 also applies to executory contracts.

4. While section 365 speaks in terms of the trustee's powers, a debtor in possession has the rights and powers of the trustee. 11 U.S.C. § 1107. *Accord, e.g. In re Marple Publishing Co.*, 20 B.R. 933, 935 (Bankr.E.D.Pa.1982).

lished in the lease. *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S., at 531, 104 S.Ct. at 1198; *Matter of Braniff Airways, Inc*, 783 F.2d 1283, 1285 (5th Cir.1986); *In re C & L Country Market of New Market, Inc.*, 52 B.R. 61 (Bankr.E.D.Pa.1985). However, if the lease is assumed, the estate is liable for the full performance of the lease and any subsequent postpetition breach or rejection of the lease creates an administrative expense claim. *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S., at 531–536, 104 S.Ct. at 1198–1201; *In re Marple Publishing Co. See* Countryman, *Executory Contracts in Bankruptcy:* Part II, 58 Minn.L.R. 479, 516 n. 366 (1974); Ehrlich, at 6 n. 16.

Significantly for this dispute, the assumption of a lease not only imposes upon the debtor the obligation to cure the prepetition default but it also transforms the prepetition default into an obligation of the estate. As such, it is an administrative expense claim, should the debtor elect to reject the lease after it has been assumed, an action permitted by 11 U.S.C. § 365(g)(2). As the Supreme Court recently noted:

> Should the debtor in possession elect to assume the executory contract, however, it assumes the contract *cum onere, In re Italian Cook Oil Corp.*, 190 F.2d 994, 996 (3d Cir.1951), and the expenses and liabilities incurred may be treated as administrative expenses, which are afforded the highest priority on the debtor's estate, 11 U.S.C. § 503(b)(1)(A) (1982 ed.)

*N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. at 531–532, 104 S.Ct. at 1199.

■ By assuming a lease agreement, with its attendant benefits as well as burdens, the debtor is required to provide the lessor with the full benefit of its bargain. *In re Multech Corp.*, 47 B.R. 747, 752 (Bankr.D.Iowa 1985):

> Indeed, the cost of assumption is nothing short of complete mutuality and requires performance in full just as if bankruptcy had not intervened.

*Accord* Fogel, *Executory Contracts and Unexpired Leases in the Bankruptcy Code*, 64 Minn.L.Rev. 341, 356–357, 376 (1980). The obligation on the part of the debtor, by virtue of lease assumption, to fully perform, (and that its failure to perform will result in an obligation borne by the debtor's estate), yields the significant consequence that the prepetition default also becomes an obligation of the estate, unless the lessor agrees otherwise. *LJC Corp. v. Boyle*, 768 F.2d 1489, 1494 n. 6 (D.C.Cir.1985):

> We agree that because LJC assumed the leases, *payments necessary to cure its default before assumption* and to satisfy its obligations after assumption qualify as expenses of administration under § 503(b)(1)(A).

(emphasis added).[5]

It is quite apparent then that a decision by a debtor in possession to assume an unexpired lease may be of considerable importance to unsecured creditors, since resulting administrative claims are a first priority. *See Ehrlich*, at 6, 67. If the assumption of the lease proves unwise, the unsecured creditors will find their payments from the estate reduced. As one court has noted:

> Furthermore, not limiting a landlord's administrative expense arising from rejection of an assumed contract is only fair since the assumption of an executory contract reflects a business judgment by a Debtor-in-Possession that some benefit will inure to the estate and thus to unsecured creditors from assuming this particular prepetition obligation. Should that judgment prove wrong, the unsecured creditors may be harmed by the amount of the landlord's claim, particularly in the case of a long-term lease; nonetheless, they rather than the lessor should bear the risk since the assumption was initially intended to benefit them.

---

**5.** To the extent that either *Matter of Robinson Truck Line, Inc.*, 47 B.R. 631 (Bankr.N.D.Miss. 1985) or *Matter of Schatz Federal Bearings Co., Inc.*, 5 B.R. 549 (Bankr.S.D.N.Y.1980) may be read to apply a different result for prepetition defaults of assumed labor contracts, I would respectfully disagree. Except as modified by 11 U.S.C. § 1113, unexpired labor contracts are treated as executory contracts governed by § 365. *N.L.R.B. v. Bildisco and Bildisco.*

*In re Multech Corp.*, 47 B.R. at 747 (footnote omitted).

To its credit, the creditor's committee here understood the potential adverse consequences of Mushroom's motion to assume M & M's lease and sought to protect the interests of unsecured creditors by becoming involved in the assumption decision. Insofar as rental payments falling due post-assumption are concerned, the committee protected its members rights. However, as I will discuss below, the committee did not reduce the estate's liability to cure the prepetition lease default.

### III.

### A.

The committee's first position is that the lease was never assumed and thus the prepetition default remains an unsecured claim. The committee argues that the debtor's motion to assume was granted on November 5, 1985, five days after the lease had expired. Citing the proposition, with which I have no quarrel, that a lease which has expired prepetition cannot be assumed postpetition, *see e.g., In re Triangle Laboratories, Inc,* 663 F.2d 463 (3d Cir.1981); *In re DeSantis,* 66 B.R. 998 (Bankr.E.D.Pa. 1986), the creditor's committee then argues that the debtor had no power to assume the M & M lease on November 5, 1985. This contention overlooks some critical facts and legal principles.

■ The committee cannot contend that the lease is automatically rejected by virtue of 11 U.S.C. § 365(d)(4) since the debtor filed its motion to assume within the sixty day statutory time period. *See In re National Paragon Corp.,* 74 B.R. 180 (E.D.Pa.1987); *Matter of Condominium Administrative Services, Inc.,* 55 B.R. 792, 798–799 (Bankr.M.D.Fla.1985). Nor can the committee argue that assumption was entered into without requisite court approval. *See In re Walat Farms, Inc.,* 69 B.R. 529 (Bankr.E.D.Mich.1987); *In re Marple Publishing Co.* Rather, the committee posits that the delay in ruling upon the motion beyond October 31, 1985—the date the first lease option expired—which was caused, at least in part, by the committee's negotiation efforts, negated the debtor's right to assume. Even if that position were correct, that argument should have been made prior to the entry of the order of November 5, 1985, granting the motion to assume, not many months later. If the committee believed the order of November 5, 1985, which was entered expressly with its consent, was improper, it was free to file an appeal from that order. *See In re National Paragon Corp. See generally In re Comer,* 716 F.2d 168, 171–174 (3d Cir.1983) (order granting motion for relief from stay may be appealed). Similarly, the lessor was free to challenge the debtor's motion based upon the expiration of the lease if M & M opposed assumption. *See e.g., In re Petralex Stainless, Ltd.,* 78 B.R. 738 (Bankr.E.D.Pa.1987). Since neither the lessor nor the committee objected to the debtor's motion, and an order was duly entered and never challenged, the order is binding and waives any defects to assumption that may have existed. *See In re J. Woodson Hays, Inc.,* 69 B.R. 303 (Bankr.M. D.Fl.1987). *Cf. In re J.F. Hink & Son,* 815 F.2d 1314 (9th Cir. 1987) (provisions of § 365(f)(3) may be waived).

■ Even if I were to accept the committee's position that the lease was never validly assumed, I would view the debtor's agreement as a new postpetition lease arrangement with M & M, either within or without the ordinary course of business, pursuant to 11 U.S.C. § 363(b), (c). The requisite notice and hearing was provided and court approval was obtained. *Compare In re Dant and Russell, Inc.,* 67 B.R. 360, 362–363 (D.Or.1986) (postpetition leases were invalid as no notice and opportunity for a hearing provided) *with Richmond Leasing Co. v. Capital Bank N.A.*

■ The limitations upon lease assumptions, embodied in § 365, do not apply to postpetition leases entered into by virtue of § 363. *Richmond Leasing Co. v. Capital Bank, N.A.,* 762 F.2d at 1311:

Moreover, to the extent that the amended lease represents a true renegotiation

of the obligations ... it falls entirely outside of § 365's concern. 11 U.S.C. §§ 1107 and 1108, taken together, authorize a debtor in possession to operate the business of the debtor. Nothing in the code suggests that the debtor may not modify its contracts when all parties to the contracts consent.[6]

*Accord, In re Schuld Manufacturing Co.,* 43 B.R. 535 (Bankr.W.D.Wis.1984). In addition, a breach of a valid postpetition lease is treated as an administrative expense. *In re Chugiak Boat Works,* 18 B.R. 292, 296–297 (Bankr.D.Alaska 1982).

Therefore, I reject the committee's implicit argument that this court's order expressly granting assumption can now be challenged. Even if it could, it would not alter the result that Mushroom and M & M were parties to a valid lease agreement entered into postpetition.

## B.

■ Section 365(a) permits a debtor in possession to assume an unexpired lease subject to court approval. Here that approval was granted upon due notice to parties in interest. Section 365(b)(1)(A) obligates the debtor in possession, "at the time of assumption", to cure or provide "adequate assurance" of a "prompt cure" of any prepetition defaults. In this matter, the parties agreed to a payment schedule designed to cure the prepetition defaults. Despite the statutory language, the committee argues that Mushroom never assumed the M & M lease because it failed to cure the prepetition lease default even though it retained possession of the leased premises and made a partial payment toward that default. Without any supporting case citation, it contends that there can be no assumption under § 365 until all lease defaults are cured.[7] I disagree.

■ Unless the court approves of a different arrangement, a lease is assumed once court approval is obtained. The statutory language of § 365(b)(1)(A) allows a debtor in possession time to cure a prepetition default, so long as the cure is prompt and there is "adequate assurance" of payment. Providing "adequate assurance" of a prompt cure *"is a substitute for the taking of the action."* 2 *Collier on Bankruptcy,* ¶ 365.04, at 365–37 (15th ed. 1987) (emphasis added). If a lessor, or any other party in interest, is dissatisfied with the proposed cure, it is free to object to the debtor's motion. Again, here the parties agreed to provide a cure of the prepetition lease default over a four month period. Since M & M and the committee were satisfied with the debtor's offer, both in terms of timing and in terms of adequate assurance, it was within the discretion of this court to ratify the agreement upon notice and hearing. Thus, the lease was assumed when the order was entered granting the motion, and Mushroom's failure to cure simply represents a post-assumption breach of the lease.[8]

■ Alternativley, even if the lease were not assumed, for the reasons mentioned above I would conclude that the parties entered into a valid postpetition lease pursuant to 11 U.S.C. § 363(b). Thus, Mushroom's failure to cure would represent, simply, the postpetition breach of a postpetition agreement. This, in turn, would give rise to an administrative claim.

## C.

■ The committee's final argument is one of waiver. It contends that, even if the lease were assumable and were assumed, M & M waived its right to make an admin-

---

**6.** Thus, if the rental increase demanded by M & M were to alter the analysis from that of a lease assumption to that of postpetition lease creation, Mushroom had the power to enter into such an arrangement with M & M's consent and it received court approval for the postpetition agreement after requisite notice.

**7.** The three cases cited by the committee all concern the application of §§ 365(d)(3) and (4), not the issue at bench. Moreover, the commit-

tee's argument is belied by those decisions stating that the prepetition default becomes an administrative expense upon assumption. *See LJC Corp. v. Boyle.*

**8.** Although not requested by the committee, to hold otherwise would require M & M to return the one payment it did receive, as unsecured claims in this case will not be paid in full.

istrative claim for a sum greater than that set forth in ¶ 4(A) of the consent order of November 5, 1985. I agree that, as a product of the assumption negotiations between a lessor, lessee and other parties in interest, the lessor can waive its right to seek an administrative expense. Indeed, here, in paragraph 4(A), M & M clearly waived its right to claim that postpetition rental payments for the entire term of the assumed lease, *see In re Multech Corp.,* (as opposed to the time Mushroom occupied the premises), would be treated as an administrative expense. However, I must disagree with the committee that M & M waived its right to assert the prepetition default as an administrative expense.

The committee focuses upon the language of ¶ 4(A) of the order which speaks to M & M's administrative claim and notes that the order does not include any prepetition obligation. However, ¶ 4(B) of the order, which defines M & M's unsecured claim, also neglects to include the debtor's prepetition obligation. Thus, viewing the November 5 order as a whole, the creditors' committee argument is that the lessor agreed to the following: the debtor would assume the M & M lease and obligate itself to pay, for the 12 month lease extension period, $4,000.00 per month for a total of $48,000.00; the lessor would relinquish entirely, even as a general unsecured creditor, its prepetition claim totalling $59,672.70; and, the lessor would further limit its postpetition priority claim to only those rental payments falling due while the debtor remained in possession of the leased premises.[9] After reviewing the entire consent order, I cannot accept the committee's contention. Rather, I credit M & M's testimony that it was very concerned about receiving payment for its prepetition default and would not have totally abandoned such a claim. Thus, I view the absence of any mention of the prepetition default in ¶ 4 of the consent order to mean that the parties were only defining the estate's obligation for the postpetition rental payments and were not seeking to alter

the debtor in possession's obligation to cure the default, or have such failure be borne by the estate. *See LJC Corp. v. Boyle.*

### IV.

In sum, the creditors' committee's position is to treat the rights of M & M no better than if the debtor had rejected the lease. This overlooks the significance that an order was entered, with the consent of the committee, granting the debtor's motion to assume the M & M lease. That order has the legal effect of granting M & M an administrative expense claim. Thus, the lessor's motion will be granted.

An appropriate order will be entered.

---

**9.** By this analysis, the debtor could have immediately converted a $59,000.00 unsecured claim into a $48,000.00 unsecured claim by never occupying the premises.