[No. B044842. Second Dist., Div. Two. Aug. 28, 1990.]

In re VALLEY STATE BANK in Liquidation.
FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver, etc., et al., Petitioners and Respondents, v.
AUGUST INCOME GROWTH FUND 81, Objector and Appellant.

Agapay, Levyn & Halling and Chris W. Halling for Objector and Appellant.

R. Keith Davis for Petitioners and Respondents.

OPINION

GATES, J.—The parties to the instant appeal, August Income Growth Fund 81 (August), the Federal Deposit Insurance Corporation (FDIC) and Capital Bank of California (Capital Bank), submitted to the superior court for summary adjudication a number of issues relating to the assignment of a lease executed by Valley State Bank. The real property covered by the agreement was owned by August and occupied by the bank as its place of business.

■ August challenges that portion of the court's order which permitted the FDIC and Capital Bank to retain possession and control of the leased premises without paying August an outstanding obligation of $93,725.74, or even guaranteeing its payment in full by some specified future date.

Because the matter was presented upon stipulated facts and exhibits, the evidence was not in conflict. It established that on September 28, 1987, the Superintendent of Banks for the State of California (superintendent) took possession of the property and business of Valley State Bank and ordered that it be finally liquidated. (Fin. Code, § 3100.) He immediately "tender[ed] to the [FDIC] the appointment as receiver of such bank." (Fin. Code, § 3221.) The FDIC accepted (Fin. Code, § 3222), thereby succeeding to the "powers, rights and privileges" granted to the superintendent with respect to the liquidation of the bank. (Fin. Code, § 3223.)

On that same day, September 28, pursuant to a purchase and assumption agreement and with the approval of the trial court, the FDIC, as receiver, transferred to Capital Bank certain assets, including the Valley State Bank/August lease. (Fin. Code, §§ 3110, 3110.1, 3131.) At the time of the transaction, Valley State Bank owed August $93,725.74 for common area charges, administration fees, general property tax increases and insurance increases which had accrued from 1983 through 1987. Although Capital Bank paid August $9,172.98 as its pro rata share of the various expenses associated with the lease from September 28, 1987, through December 31, 1987, August received no payment for the remaining amounts owed, except in the form of a receiver's certificate of proof of claim issued by the FDIC as receiver for Valley State Bank.

For reasons it neither justifies nor attempts to explain, the FDIC elects to refer to August, a landlord with a right to repossess its property in the event of a breach by the lessee, as an "unsecured creditor." From this remarkable premise it then argues that inasmuch as "[a]ll unsecured pre-closing debts of the insolvent bank must . . . be satisfied by way of a Receivership Certificate pending liquidation of the assets of the insolvent bank[,] . . . [t]o pay AUGUST in currency, prior to the close of the Receivership would violate the legislative scheme embodied in *California Financial Code* section 3119.5 [relating to the order of priority for expenses and claims of unsecured creditors]." However, the premise being faulty, the conclusion necessarily fails.

A lease, particularly one such as here in issue, which was entered into years ago when rentals generally were much less expensive, i.e., in 1979, and which has many years to run, i.e., to 2001, may be extremely valuable.

Obviously, no entity, governmental or private, may seize and retain any asset, or property real or personal, without paying for it.[1]

In fact, section 3111 of the Financial Code expressly requires the superintendent or FDIC, "[w]ithin six months after taking possession of the property and business of any bank," to *"terminate* or *adopt* any executory contract to which the bank may be a party including leases of real or personal property." (Italics added.)

It further provides that "[c]laims for damages resulting from the *termination* of any such contract or lease may be filed and allowed, but no claim of a landlord for damages resulting from *the rejection of an unexpired lease* of real property or under any covenant of such lease shall be allowed in an amount exceeding the rent reserved by the lease, without acceleration, for the year succeeding the date of the surrender of the premises plus the amount of any unpaid accrued rent without acceleration. Any such claim must be filed within 30 days of the date of such *termination* or within the time that claims must be filed under Section 3118, whichever is longer." (Italics added.)

The conspicuous absence of any reference to the filing of a claim to recoup amounts owed under *adopted,* as opposed to *terminated,* leases evidences its author's realization that the claims procedure was not designed to permit the confiscation of property without payment. Consequently, we hold that the FDIC may not discharge a preclosing debt for past due rent through the issuance of a receiver's certificate, unless it elects to terminate the lease. As August notes, the certificate tendered to it merely entitles it to "a pro rata dividend with all other unsecured creditors in the highly unlikely event there are assets left after payment of secured claimants, expenses of liquidation, priority deposits, and regular deposits."

In sum, if the FDIC chooses to adopt a lease and thereby require the lessor to abide by its terms, it must cure any default by means of payment in full. Moreover, under Financial Code section 3110.1, subdivision (d)(1), Capital Bank, could itself be liable for the unpaid expenses due under the Valley State Bank/August lease since that section provides that it, as "the purchasing bank," "shall, ipso facto and by operation of law and without further transfer, substitution, act, or deed, to the extent provided in the

---

[1] This rudimentary legal and equitable principle, of course, always has been recognized and honored, both statutorily and judicially, in bankruptcy proceedings. (11 U.S.C. § 365; *NLRB v. Bildisco & Bildisco* (1983) 465 U.S. 513, 531-532 [79 L.Ed.2d 482, 498-500, 104 S.Ct. 1188]; *In re Italian Cook Oil Corp.* (3d Cir. 1951) 190 F.2d 994, 996-997; *In re Mushroom Transp. Co., Inc.* (Bankr.E.D.Pa. 1987) 78 B.R. 754, 758-759; 2 Collier on Bankruptcy (15th ed. 1990) [¶] 365.04, pp. 365-36 through 365-38.)

agreement of purchase and sale or in the order of the court approving the purchase and sale . . . . [¶](1) [s]ucceed to the . . . *obligations* . . . of the bank whose business is sold . . . ." (Italics added.)

Whether the terms of the present purchase and assumption agreement might preclude application of Financial Code section 3110.1, at least with respect to preclosing defaults in rent, or might entitle Capital Bank to be indemnified by the FDIC should Capital Bank elect to remain in possession by paying the existing arrearages itself, are not questions to be decided here. They are, of course, issues which will ultimately have to be resolved by and between the FDIC and Capital Bank. For our present purposes, however, it is sufficient to declare, as we do, that, regardless of any contractual or statutory duty to remedy Valley State Bank's default, Capital Bank is subject to eviction under the terms of the Valley State Bank/August lease, unless that default is cured.

Finally, pursuant to paragraphs 26 and 51 of the lease, August is also entitled to recover its litigation costs, including reasonable attorney's fees, and interest at the rate of 10 percent on all unpaid sums.

The order under review is reversed. August shall receive its attorney's fees and costs on appeal.

Roth, P. J., and Fukuto, J., concurred.