**In re LEON'S CASUALS COMPANY, INC., Debtor.**

**Bankruptcy No. 89–01519.**

United States Bankruptcy Court, S.D. Alabama.

Nov. 30, 1990.

Irvin Grodsky, Mobile, Ala., for debtor.

Robert R. Blair, Selma, Ala., for movant.

## MEMORANDUM OPINION

ARTHUR B. BRISKMAN, Bankruptcy Judge:

This matter came on for hearing on motion of Selma Community Builders, Incorporated, Movant, for payment of an administrative expense by the Debtor, Leon's Casuals Company, Incorporated. Appearing were Irvin Grodsky, Attorney for the Debtor, and Robert R. Blair, Attorney for the Movant. After due deliberation on counsels' arguments, stipulations of fact, and briefs subsequently filed, the Court concludes and orders as follows:

1. Aronov Realty is the rental agent for Selma Community Builders and was authorized to act on behalf of the Movant under the terms of the original lease.

## FINDINGS OF FACT

The facts of this case are undisputed. On July 6, 1971, the Debtor, Leon's Casuals Co., Inc. and the Movant's agent, Aronov Realty Company,[1] entered into a written lease agreement for Store # 25 for a women's clothing store in the Selma Mall, which provided for an initial five-year term with three additional five-year terms at the option of the Debtor.[2] Under the terms of the lease, the minimum rent was established at $22,500 per year to be paid in monthly installments of $1,875. The lease also required an additional payment of 4 percent of all sales in excess of $500,000 but less than $1,000,000 and 3 percent of all sales in excess of $1,000,000. In addition, the lease required the Debtor to pay a pro rata share of any increase in ad valorem and other property taxes for the mall. On May 18, 1982, the parties amended the lease to add Store # 28, a children's clothing store, to the leased property.

The Debtor defaulted under the terms on the lease in March 1989. On August 1, 1989, the Debtor filed a Chapter 11 petition in this Court. The Debtor was current as to the minimal rental payments, but delinquent as to the percentage of sales rent and the pro rata share of property taxes in the following amounts: $18,430.26 for percentage of sales rent due from February 1989 to August 1989; $1,282.49 for the pro rata share of ad valorem taxes for 1988; $3,932.61 for percentage of sales rent due from August 1989 to October 1989; and $1,251.03 for pro rata share of ad valorem taxes for 1989.

The Debtor filed a petition to assume the lease with Aronov Realty, agent of the Movant, for both stores. Aronov Realty agreed to the assumption of the lease for the women's clothing store but objected to the assumption of the lease on the children's store. After negotiations, the parties agreed the Debtor would assume the lease for the women's clothing store (Store # 25) and reject the lease for the children's

2. The Debtor exercised these options to extend the lease in November 1977, June 1982, and December 1987.

store (Store # 28). In a September 18, 1989 letter to Jeff Weil of Aronov Realty Company, the Debtor's attorney, Irvin Grodsky, requested Mr. Weil to sign a copy of the letter in order to affirm Aronov Realty's agreement to the modification of the Debtor's original petition to assume the lease. The following passage appeared in the letter:

> ARONOV REALTY COMPANY, AS AGENT FOR THE LANDLORD OF THE SELMA MALL, SELMA ALABAMA, HEREBY CONSENTS TO THE DEBTOR'S ACCEPTANCE OF ITS LEASE ON ITS MAIN STORE AND THE REJECTION OF ITS LEASE ON ITS CHILDREN'S STORE IN THE SELMA MALL. LANDLORD'S CONSENT TO THE ACCEPTANCE OF THE LEASE FOR THE MAIN STORE IS EXPRESSLY CONDITIONED ON LEON'S PAYING SEPTEMBER RENT AND KEEPING ALL FUTURE RENTS CURRENT. LANDLORD IS REJECTING THE LEASE FOR SPACE # 28 IN THE SELMA MALL AND ACCEPTING THE LEASE FOR SPACE # 25 IN THE SELMA MALL, AS CONDITIONED ABOVE.
>
> BY: Jeffrey T. Weil (signed)
> AS ITS: 9/21/89

On September 25, 1989, the Debtor's attorney appeared at the hearing for the assumption of the lease and presented the Court with the original of the September 18 letter. The Court's September 28, 1990 order authorizing the assumption of the lease contains no reference to the Debtor's duty to cure prepetition defaults under the lease. On July 27, 1990, the Movant filed the present motion for an administrative claim in the amount of the prepetition and postpetition percentage rental and property taxes.

## CONCLUSIONS OF LAW

The issue before this Court is whether a claim for prepetition rent and property taxes is an administrative expense when the debtor assumes an unexpired lease under § 365(b)(1) although neither the agreement between the lessor and the debtor nor the order approving the assumption of the lease are conditioned on the debtor's duty to cure all defaults under the lease.

Section 365 of the Bankruptcy Code allows the trustee [3] of an estate to assume or reject executory contracts and unexpired leases, subject to the requirements of the section.[4] Under subsection (b)(1)(A) of § 365, if there has been a default in an unexpired lease, the trustee may not assume the lease unless, at the time of assumption, the trustee "cures, or provides adequate assurance that the trustee will promptly cure, such default."

The legislative goal of § 365 was to allow the debtor's estate to benefit from contracts entered into by the debtor while assuring the mutuality of obligation between the debtor and the nonbankrupt party to the contract. When the debtor's estate assumes an unexpired lease, it takes on all obligations and liabilities under the lease as if the bankruptcy petition had never been filed. 2 *Collier on Bankruptcy* ¶ 365.01[2] at 365–14 (15th ed. 1990) (discussing § 70b of the Bankruptcy Act, a precursor to § 365); *see also In re Airlift Int'l, Inc.*, 761 F.2d 1503, 1508 (11th Cir. 1985). The bankruptcy court in *In re Mushroom Transp. Co., Inc.*, 78 B.R. 754 (Bankr.E.D.Pa.1987) agrees that "[b]y assuming a lease agreement, with its attendant benefits as well as burdens, the debtor is required to provide the lessor with the full benefit of its bargain."

Under § 365(b)(1), the debtor "may not assume" a lease unless he cures any default existing at the time the lease is assumed. Section 102(4) explains the wording "may not" as prohibitive rather than permissive. 11 U.S.C. § 102(4). In keeping with § 365(b)'s policy of mutuality of

---

**3.** Under Bankruptcy Rule 9001(10), "trustee" includes a debtor in possession in a Chapter 11 case.

**4.** *See In re Rachels Indus., Inc.,* 109 B.R. 797, 802 (Bankr.W.D.Tenn.1990) for requirements of § 365. The Court, with great personal pleasure, follows *Rachels* despite the Debtor's intriguing attempt to distinguish the holding.

obligation, the debtor has no choice as to whether to cure defaults under the lease; to protect the lessor's interest, the Bankruptcy Code requires the debtor to cure defaults. Without the cure of defaults, there can be no assumption of the lease. Accordingly, the Debtor pledged to cure any prepetition defaults by assuming Lease # 25.

■ The Debtor asserts the Movant waived the right to cure by failing to include payment of prepetition claims as a condition to assumption in the post petition agreement executed by the parties. The responsibility to cure defaults under a lease stems from the language and policy of § 365, and not from an agreement between the debtor and the lessor. However, the lessor can waive its rights to cure. *Mushroom*, 78 B.R. at 762. Under Alabama law, waiver requires the *intentional* relinquishment of a known right. *Brown–Marx Assoc., Ltd. v. Emigrant Sav. Bank*, 703 F.2d 1361, 1369 (11th Cir.1983) (emphasis added). In addition, waiver must be shown in an unequivocal manner, and, if not express, the language or conduct of the waiving party must clearly indicate an intention to surrender. *Isom v. Johnson*, 205 Ala. 157, 159, 87 So. 543, 545 (1920).

The parties' agreement contains no express waiver of the right to cure on its face. The contract "expressly conditioned" the lessor's acceptance on the Debtor's payment of September rent and keeping current on future rent, but it does not expressly *waive* the Movant's right to cure under § 365. Further, this Court finds no "unequivocal" wording from which to imply an intent to surrender. Finally, the Debtor knew of its obligation under § 365(b)(1)(A), and the Movant's conduct did not mislead the Debtor into thinking that the right was waived.

■ To ensure the lessor's benefit under an assumed lease, the expenses and liabilities incurred by the lessor are given administrative status. In *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 531–32, 104 S.Ct. 1188, 1198–99, 79 L.Ed.2d 482 (1984), the Supreme Court held the expenses and liabilities incurred under an assumed exec-

utory contract become administrative expenses under 11 U.S.C. § 503(b)(1)(A). The *Mushroom* court allowed an administrative priority for prepetition default under an unexpired lease, explaining,

> [t]he obligation on the part of the debtor, by virtue of lease assumption, to fully perform, (and that its failure to perform will result in an obligation borne by the debtor's estate), yields the significant consequence that the prepetition default also becomes an obligation of the estate, unless the lessor agrees otherwise.

78 B.R. at 759. *Accord LJC Corp. v. Boyle*, 768 F.2d 1489, 1494 n. 6 (D.C.Cir. 1985). In the present case, this Court finds the duty to cure prepetition defaults to be an administrative expense pursuant to 11 U.S.C. § 503(b)(1)(A). *Bildisco*, 465 U.S. at 531–32, 104 S.Ct. at 1198–99; *Mushroom*, 78 B.R. at 759. Based upon the foregoing findings of fact and conclusions of law, the Movant's motion for payment of an administrative expense of prepetition and postpetition rent and property taxes in the amount of $29,350.60 is due to be granted and the Debtor's objection is due to be overruled.