**CONCERTO SOFTWARE, INC., Appellant,**

v.

**VITAQUEST INTERNATIONAL, INC., Appellee.**

**No. 02–CV–168.**

United States District Court, D. Maine.

March 4, 2003.

Kevin T. Lamb, Testa, Hurwitz & Thibeault, LLP, Boston, MA, Michael D. Traister, Murray, Plumb & Murray, Portland, ME, Peter S. Plumb, Murray, Plumb & Murray, Portland, ME, for Concerto Software Inc.

Alex Kress, Riker, Danzig, Scherer, Hyland & Perretti, LLP, Morristown, NJ, Andrew A. Cadot, Perkins, Thompson, Hinckley & Keddy, Portland, ME, for Vitaquest International Inc.

Benjamin E. Marcus, Drummond, Woodsum & MacMahon, Portland, ME, for Danmark Inc.

Robert Checkoway, Portland, ME, U.S. Trustee.

### ORDER

SINGAL, Chief Judge.

Appellant Concerto Software, Inc. appeals from an order entered by the United States Bankruptcy Court, District of Maine denying Appellant's motion to compel enforcement of the court's November 21, 2001 Sale Order. For the reasons discussed below, the Court AFFIRMS the bankruptcy court's decision.

## I. STANDARD OF REVIEW

■■■ In reviewing a bankruptcy court's decision, a district court reviews rulings of law de novo and findings of fact only for clear error. *Tex. Instrument Fed. Credit Union v. DelBonis,* 72 F.3d 921, 928 (1st Cir.1995). Subject matter jurisdiction is a legal issue, and, thus, is reviewed de novo. *See Balzotti v. RAD Invs.,* 273 B.R. 327, 329 (D.N.H.2002) (citing *Durkin v. Benedor Corp. (In re G.I. Indus.),* 204 F.3d 1276, 1279 (9th Cir.2000)).

## II. BACKGROUND

On September 7, 2001, Danmark, Inc. d/b/a/ DMI and Beacon Marketing Services, Inc. (collectively "Debtors") each filed a voluntary petition for reorganization under Chapter 11 in the United States Bankruptcy Court for the District of Maine. Prior to and during bankruptcy, an essential aspect of the Debtors' business was telemarketing. In their telemarketing business, the Debtors used software developed by Cellit, Inc. ("Cellit") pursuant to a Maintenance Agreement dated March 29, 1999, and a Master Sales and Software License Agreement dated March 30, 1999 (collectively "Cellit Agreement").

On October 10, 2001, Debtors and Cellit, among others, entered into an agreement entitled Term Sheet Regarding Assumption and Partial Assignment of License, Assumption of Maintenance Agreement and Related Transactions ("Term Sheet"). Pursuant to the Term Sheet, Cellit agreed that Debtors may assume and assign the Cellit Agreement "provided that all pre-

petition arrearages are paid in full, and any post-petition payment defaults are cured and provided that the assignee provides adequate assurances of future performance and subject to Bankruptcy Court approval." (*See* Mot. of Debtors to Assume Master Sales and Software License Agreement at Ex. A). The payment schedule set forth in the Term Sheet required payments on the first of every month in the amount of $14,985.35 for a period of one year.

On October 31, 2001, the Debtors filed a motion to assume, inter alia, the Master Sales and Software License Agreement. On November 13, 2001, the Debtors entered into a letter agreement with Vitaquest ("Vitaquest Agreement") regarding the sale of Debtors' assets to Vitaquest. The same day, Debtors filed a motion to sell substantially all its assets to Vitaquest International, Inc. ("Appellee" or "Vitaquest"), or Vitaquest's assigns. On November 21, 2001, the bankruptcy court entered an Order ("Sale Order") granting the Debtors' motions.

In numbered paragraph seven ("Paragraph Seven") of the Sale Order, the court stated: "In connection with the assumption of the Cellit Agreement, Vitaquest or the Buyer[1] shall pay to Cellit the sum of $211,538.05 (the 'Cellit Cure Amount') which shall be paid in accordance with the . . . Term Sheet." (*See* Sale Order at 12). Despite the bankruptcy court's Order, neither Vitaquest nor its designee have made any payments. As a result, Concerto Software, Inc. ("Concerto" or "Appellant"), Cellit's successor-in-interest, filed a Motion to Compel Enforcement of the Sale Order ("Motion to Compel") on June 17, 2002.

The bankruptcy court held a telephonic hearing on August 13, 2002. At the hear-

ing, the court expressed reservations about its jurisdiction to hear Concerto's Motion to Compel and asked that the parties submit memoranda regarding the court's jurisdiction. After Concerto and Vitaquest filed timely memoranda, the bankruptcy court held another telephonic hearing on September 10, 2002. Following argument by counsel, the bankruptcy court concluded orally that it lacked jurisdiction for the following reasons:

> The order incorporated an agreement of the parties then before the Court that the cure, the immediate cash cure, would be waived and that the cure would take place over time and that the parties also agreed that there was adequate assurance to their mutual satisfaction that both the cure amount, meaning the arrearages, and the going forward obligations under the contract would be paid. This Court's order was reflective of that agreement and nothing more. If there is a dispute under that agreement which was assumed as a condition of assignment, meaning sale, then that dispute should be resolved before another forum with appropriate jurisdiction of the parties.

(*See* Tr. of Sept. 10, 2002 Telephonic Hr'g at 20). Accordingly, on September 11, 2002, the bankruptcy court entered an Order denying Appellant's Motion to Compel Presently before this Court is Concerto's appeal from the bankruptcy court's September 11 Order.

## III. DISCUSSION

### A. "Core" and "Related To" Jurisdiction

■ Congress defines the scope of bankruptcy jurisdiction in 28 U.S.C. § 1334 (2003). *See New Eng. Power and*

---

1. The Sale Order identified the "Buyer" as Vitaquest's designee, Infotopia, Inc. (*See* Sale Order at 6).

*Marine, Inc. v. Town of Tyngsborough (In re Middlesex Power Equip. & Marine, Inc.)*, 292 F.3d 61, 66 (1st Cir.2002). Section 1334 provides that the district courts shall have original but not exclusive jurisdiction of all civil proceedings "arising under" title 11, "arising in" title 11, and "related to" cases under title 11. 28 U.S.C. 1334(b). The district courts may, in turn, refer any or all of such proceedings to the bankruptcy judges for the district. 28 U.S.C. § 157(a) (2003); *Middlesex Power Equip.*, 292 F.3d at 66 n. 2.

■■■ Proceedings "arise under" title 11 if they involve a "cause of action created or determined by a statutory provision of title 11." *Wood v. Wood (In re Wood)*, 825 F.2d 90, 96 (5th Cir.1987). In contrast, proceedings "arising in" a bankruptcy case "are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *Id.*, at 97. Together, proceedings that "arise in" and "arise under" title 11 constitute the bankruptcy court's "core" jurisdiction. *See* 28 U.S.C. § 157(b); *Id.*, at 96–97.[2]

■■■ On the other hand, "related to" proceedings fall within the bankruptcy court's "non-core" jurisdiction. *See* 28 U.S.C. 157(c).[3] The test for determining whether a civil proceeding is "related to" title 11 is "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re G.S.F. Corp.*, 938 F.2d 1467, 1475 (1st Cir.1991) (internal quotations and citations omitted). Thus, the proceeding need not be against the debtor or against the debtor's property. *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984). Rather, an action is "related to" bankruptcy if the outcome could "alter[ ][the] debtor's rights, liabilities, options, or freedom of action, or otherwise

---

**2.** 28 U.S.C. 157(b) provides in relevant part:

(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11 . . . .

(2) Core proceedings include, but are not limited to—

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid, or recover preferences;

(G) motions to terminate, annul, or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent, or priority of liens;

(L) confirmations of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

**3.** 28 U.S.C. § 157(c) provides in relevant part:

(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11.

have an impact upon the handling and administration of the bankrupt estate." *G.S.F. Corp.*, 938 F.2d at 1475 (internal quotations and citations omitted).

### 1. "Core" Jurisdiction

Appellant argues that the Sale Order imposes cure obligations on Vitaquest for payment of the Cellit Cure Amount as a condition of Debtors' right to assume the Cellit Agreement. As the right to cure arises under 11 U.S.C. §§ 365(b) and (f), Appellant argues its Motion to Compel is a "core" matter within the bankruptcy court's continuing jurisdiction. *See* 11 U.S.C. §§ 365(b), (f) (2003).[4] The Court disagrees.

■ As a threshold matter, the Court finds that Appellant adheres to an incorrect interpretation of the bankruptcy court's Sale Order. A bankruptcy court retains jurisdiction to interpret its own orders. *Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223, 230 (2d Cir.2002) (internal citations omitted). Here, contrary to Appellant's argued interpretation, the bankruptcy court clearly stated during the September 10, 2002 telephonic hearing that the Sale Order does not create any new rights or obligations. The Court does not find any

reason to question the bankruptcy court's interpretation of its own Sale Order.

Furthermore, the statutory language of section 365(b) allows a debtor in possession time to cure defaults on an executory contract, so long as the cure is prompt and there is "adequate assurance" of payment. 11 U.S.C. § 365(b); *In re Mushroom Transp. Co.*, 78 B.R. 754, 761 (Bankr. E.D.Pa.1987). Providing "adequate assurance" of a prompt cure " 'is a substitute for the taking of the action.' " *Id.* (quoting 3 Collier on Bankruptcy ¶ 365.05[2], at 365–48 (Alan N. Resnick & Henry J. Sommer eds., 15th ed.2002)). If any party-in-interest is dissatisfied with the proposed cure, it is free to object to the debtor's motion to assume the executory contract. *Mushroom*, 78 B.R. at 761.

Here, the parties agreed that the "immediate cash cure[ ] would be waived and that the cure would take place over time." (*See* Tr. of Sept. 10, 2002 Telephonic Hr'g at 20). Since Appellant was satisfied with the debtor's offer, it was within the discretion of the bankruptcy court to ratify the agreement upon notice and hearing. Thereafter, any dispute under the agreement is simply an action for breach of contract. *Mushroom*, 78 B.R. at 761 (finding that the debtor's failure to perform on its adequate assurance of a prompt cure

---

**4.** 11 U.S.C. § 365(b) provides in relevant part:

(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee–

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(f) provides in relevant part:

(2) The trustee may assign an executory contract or unexpired lease of the debtor only if—

(A) the trustee assumes such contract or lease in accordance with the provisions of this section; and

(B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

represents a post-assumption breach of the assumed lease). An action for breach of contract does not "arise in" or "arise under" title 11. *See Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir.1987) (characterizing plaintiff's contract action as a non-core proceeding).

### 2. "Related To" Jurisdiction

In the alternative, Appellant argues that the bankruptcy court possesses "related to" subject matter jurisdiction because enforcement of the Sale Order necessarily implicates Debtors' right to assume and assign the Cellit Agreement under sections 365(b) and (f). In response, Appellee argues that this is not a "related to" proceeding because, pursuant to section 365(k)[5], neither the Debtors nor their estates can be liable for any amount arising under the agreements.

Appellant replies that Appellee's reliance upon section 365(k) is misplaced. In support of its argument, Appellant states that section 365(k) constitutes a " 'non-recourse' statute that serves to insulate a debtor from liability for future, post-petition defaults under an executory contract after it has been assigned or sold by the debtor to a third-party." Appellant argues that its Motion to Compel, by contrast, concerns Appellant's right to have Debtors' pre-assignment arrearages cured as required by the bankruptcy court's Sale Order.

The Court does not agree that Appellee's reliance on section 365(k) is misplaced. Contrary to Appellant's argument, the case law provides that an assumption and assignment of an executory contract under section 365 substitutes the assignee for the debtor. Pursuant to section 365(k), the debtor is then "relieved from any liability for any breach of such contract ... occurring after such assignment." *Wainer v. A.J. Equities, Ltd.*, 984 F.2d 679, 683, 684 (5th Cir.1993) (internal quotations and citations omitted) (stating that once the requirements under section 365(b) and (f) are satisfied, an executory contract may be assigned thereby relieving the debtor of any future obligations under the lease); *see also Mushroom*, 78 B.R. at 761 (finding that the failure to cure after providing adequate assurance of a prompt cure merely represents a post-assumption breach of the assumed lease). Thus, regardless of the outcome of Appellant's Motion to Compel, Debtors' estate will not receive any benefit nor incur any liability.[6] Under these circumstances, the bankruptcy court lacks "related to" jurisdiction over the dispute. *See Levovitz v. Verrazano Holding Corp. (In re Verrazano Holding Corp.)*, 86 B.R. 755, 762 (Bankr.E.D.N.Y. 1988) (finding court lacked jurisdiction to decide dispute between pre-bankruptcy assignee of property and subsequent purchaser of property in a sale pursuant to 11 U.S.C. 363(b) because outcome of claims could have no effect on bankruptcy estate); *In re S & S 31 Flavors, Inc.*, 118 B.R. 202, 204 (Bankr.E.D.N.Y.1990) (finding court lacked jurisdiction to determine dispute between two non-debtor parties where none of debtor's property was at risk and resolution of dispute would have no effect on administration of bankruptcy estate).

### B. Ancillary Jurisdiction

Absent an independent jurisdictional basis, a bankruptcy court may

---

**5.** 365(k) provides as follows:

> Assignment by the trustee to an entity of a contract or lease assumed under this section relieves the trustee and the estate from any liability for any breach of such contract or lease occurring after such assignment.

**6.** The Court also notes that during the September 10, 2002 hearing, Danmark's attorney acknowledged as much by saying, "I don't believe there is resulting impact on the estate." (*See* Tr. of Sept. 10, 2002 Telephonic Hr'g at 19).

have ancillary jurisdiction "to hear a case over those claims which are logically dependent and factually similar to the trustees' claims." *Zerand–Bernal Group v. Cox (In re Cary Metal Prods.)*, 158 B.R. 459, 464 (N.D.Ill.1993). Ancillary jurisdiction permits a bankruptcy court to "take jurisdiction of ancillary claims connected to its prior orders despite the fact that neither the debtor nor the property of the estate is directly involved in the new litigation." *Bayside Fuel Oil Corp. v. Savino (In re V. Savino Oil & Heating Co.)*, CV–91–0038 (RJD), 1992 WL 118801, at *2, 1992 U.S. Dist. LEXIS 7703, at *5 (E.D.N.Y. May 21, 1992) (internal citations omitted).

Appellant argues that the bankruptcy court has ancillary jurisdiction to hear this dispute, regardless of the fact that the Debtors are no longer involved, because the Sale Order is the only unifying document that deals with the satisfaction of the cure amount pursuant to the Term Sheet. Accordingly, Appellant argues that in any state court action it will necessarily have to rely upon the core provisions of the Sale Order to prove that Appellee agreed to cure the defaults under the Cellit Agreement. This, Appellant states, unduly prejudices its case because there is risk that a state court will refuse to hear its claim on the grounds that Appellant's remedy is enforcement of the Sale Order.

Ancillary jurisdiction, however, is applied only in unusual circumstances and is strictly limited to cases where the non-bankruptcy forum cannot provide adequate relief or where other equitable factors require the bankruptcy court to exercise ancillary jurisdiction. *Cary Metal Prods.*, 158 B.R. at 464–65. There is nothing before the Court that indicates that the state court will be unable to provide adequate relief in this situation. Contrary to Appellant's argument, Appellant's rights do not arise under the Bankruptcy Code or the Sale Order but rather from an agreement entered into by the parties. Interpreting the terms of that agreement is an issue for the state court to decide. *See Camelio v. Am. Fed'n*, 137 F.3d 666, 672 (1st Cir.1998); *see also Brennan v. King*, 139 F.3d 258, 264 (1st Cir.1998).

The cases Appellant cites in support of its argument for ancillary jurisdiction are distinguishable from the present case. *See Krikor Dulgarian Trust v. Unified Mgmt. Corp. (In re Peaberry's)*, 205 B.R. 6, 7–8 (1st Cir. BAP 1997) (finding bankruptcy court "duty bound" to enforce its assumption order where Chapter 7 trustee was party to motion and order required debtor to pay cure); *Wards Co. v. Jonnet Dev. Corp. (In re Lafayette Radio Elecs. Corp.)*, 761 F.2d 84, 91–92 (2d Cir.1985) (finding action was not a "run-of-the-mine" breach of contract action, and that bankruptcy court had ancillary jurisdiction to enforce court-imposed repair obligations); *In re Rich's Dep't Stores*, 209 B.R. 810, 817 (Bankr.D.Mass.1997) (finding jurisdiction where order required debtor to pay cure); *Savino Oil*, 1992 WL 118801, at *2, 1992 U.S. Dist. LEXIS 7703, at *7 (finding ancillary jurisdiction where claims involved matters previously litigated before the bankruptcy court and bankruptcy court had expressly retained jurisdiction); *Directional Int'l, Ltd. v. Ill. Bell Tel. Co. (In re Pers. Computer Network, Inc.)*, 97 B.R. 909, 912 (N.D.Ill.1989) (finding court had jurisdiction where creditor's claims against third-party had potential to impact the debtor's estate because sale of assets from debtor to third-party was supposed to be "free and clear" of all liens); *Petrolia Corp. v. Elam (In re Petrolia Corp.)*, 79 B.R. 686, 690 (Bankr.E.D.Mich.1987) (finding equitable considerations favored exercise of bankruptcy court's ancillary jurisdiction where non-debtor plaintiffs' claims

against defendant were identical to those of the debtor's claims against the same defendant). Accordingly, the Court finds that the bankruptcy court properly decided that it lacked subject matter jurisdiction to entertain Appellant's Motion to Compel.[7]

## IV. CONCLUSION

For the reasons stated above, the Court AFFIRMS the bankruptcy court's September 11, 2002 Order denying Appellant's Motion to Compel and DENIES Appellant's request for remand (Docket # 2).

SO ORDERED.

---

7. The Court rejects Appellant's argument that the bankruptcy court has jurisdiction to enforce its own consent orders without further discussion because the Sale Order was not a consent order. "A consent decree is no more than a settlement that contains an injunction." *In re Masters Mates & Pilots Pension* *Plan,* 957 F.2d 1020, 1025 (2d Cir.1992) (citing Douglas Laycock, *Consent Decrees Without Consent: The Rights of Nonconsenting Third Parties,* 1987 U. CHI. LEGAL F. 103, 103). Here, there is nothing resembling an injunction.