**In re Ronda Barcina ANDERSON, Debtor.**

**Ronda Barcina ANDERSON and Lawrence T. Phelan, Trustee, Plaintiffs,**

**v.**

**CHESTER HOUSING AUTHORITY, Defendant.**

**Bankruptcy No. 90–14406S.
Adv. No. 91–0329S.**

United States Bankruptcy Court, E.D. Pennsylvania.

July 25, 1991.

Roger V. Ashodian, Delaware County Legal Assistance Ass'n, Chester, Pa., for debtor.

Lawrence T. Phelan, Philadelphia, Pa., trustee/plaintiff.

Ronald D. Ashby, Ashby, Ronald David & Associates, P.C., Media, Pa., for Chester Housing Authority.

James J. O'Connell, Asst. U.S. Trustee, Philadelphia, Pa., U.S. Trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

The instant proceeding was instituted by a discharged Chapter 7 debtor, who did not seek to assume her alleged leasehold rights in a public housing unit, in order to have this court establish her continuing rights in the unit as a "remaining member" of a public housing tenant family (a "remainer"). We believe that a substantial question is presented as to whether this court has subject-matter jurisdiction to hear this proceeding.

We find that the power to hear an adversary proceeding in the posture of this proceeding should be exercised sparingly and only when all considerations favor the invocation of our jurisdiction. We fail to find that the relevant considerations tip in favor of the Debtor, and therefore we will dismiss this proceeding and re-close the Debtor's underlying bankruptcy case.

### B. PROCEDURAL AND FACTUAL HISTORY

RONDA BARCINA ANDERSON ("the Debtor"), a 20–year–old resident of a public housing unit at 1208 McCafferty Place, Chester, Pennsylvania 19013 ("the Unit"), filed an individual voluntary Chapter 7 bankruptcy case on October 26, 1990. Without incident, and without her filing any motion or any pleading relating to her rights in the Unit, the Debtor obtained a

discharge order at the apparent conclusion of her no-asset case on February 22, 1991, and her case was closed on March 21, 1991.

On April 10, 1991, the Debtor filed a motion to reopen her case to add the Pennsylvania Department of Public Welfare as a creditor and to file and prosecute the instant proceeding. Although the Defendant in the proceeding, the CHESTER HOUSING AUTHORITY ("the CHA"), opposed the motion to reopen the case at a hearing on May 7, 1991, we granted the motion to reopen in an Order of that day. In so doing, we explained to the CHA that we believed that reopening a no-asset case to add an omitted creditor constituted a proper exercise of our discretion absent a showing of fraud or intentional design in omission of the creditor, as long as the Debtor complied with Local Bankruptcy Rule ("L.B.Rule") 1009.1(b). That Rule requires that any creditor added after the Debtor's meeting of creditors under 11 U.S.C. § 341(a) must be given notice of, and accorded all of the rights of, a creditor receiving such a notice in due course.

Such liberal treatment of motions to add creditors mistakenly omitted from a debtor's schedules has been widely adopted. *See, e.g., In re Soult,* 894 F.2d 815, 817–18 (6th Cir.1990); *In re Stark,* 717 F.2d 322, 324 (7th Cir.1983); *In re Candelaria,* 121 B.R. 140, 142 (E.D.N.Y.1990); *In re Bowen,* 102 B.R. 752, 754–55 (Bankr. 9th Cir. 1989); *In re Capuano,* 91 B.R. 715, 716–17 (Bankr.E.D.Pa.1988) (TWARDOWSKI, CH. J.); and *In re Young,* 70 B.R. 968, 971–72 (Bankr.E.D.Pa.1987). Therefore, cause existed to reopen the case, irrespective of whether the presence of this proceeding in itself were cause for reopening.

The proceeding was therefore filed on May 7, 1991. It came before us for trial on June 25, 1991.

At trial, the Debtor testified that her mother, Barbara Anderson ("the Mother"), moved into the Unit in 1983, accompanied by the Debtor, then a young teenager, the Debtor's older sister Marlene, and the Debtor's two older brothers. The Debtor, who now has one child, resided continuously in the Unit with the Mother from 1983 until early 1990, when the Mother left, apparently to live with a man elsewhere. At this time, the Mother owed over $4,000 in back rent to the CHA, a factor which may have motivated her move. Marlene, who had four children of her own, had moved out of the Unit from 1985 until 1988, but returned to the Unit for a substantial period before the Mother left it. The departure of the Debtor's brothers from the Unit preceded that of the Mother.

In early 1990, the CHA filed a Landlord and Tenant action, naming only the Mother as a defendant, in a local district justice of the peace court, seeking the rent due and possession of the Unit. An appeal from a judgment in favor of the CHA in that action was filed (by whom is unclear) to the Delaware County Court of Common Pleas ("the CCP Court"). On April 12, 1990, the Debtor moved the CCP Court to allow her to intervene in this proceeding. Although the CCP Court's docket entries do not indicate a disposition of this motion, the parties agree that it was orally denied on June 11, 1990.

The Debtor testified that it was always her intention to continue to make a rental payment for the unit of $211 monthly, the amount last due from the Mother, after the Mother's departure. When no agreement was reached with the CHA allowing the Debtor, her sister, and their children to remain in the Unit on this basis, the Debtor began paying her "rent" into an account of her counsel, and accumulated payments in this account of $965.00 through the end of 1990. She also filed this bankruptcy case, apparently to stay any eviction of the family from the Unit, listing the CHA as a creditor on her Schedules with a disputed claim for rent which she valued at zero.

In January, 1991, the CHA began accepting rental payments from the Debtor of amounts billed, which were in a range between $220 and $230. On the basis of the income and composition of the Debtor's household, including Marlene and her children, Joseph Pokay, the CHA's Deputy Executive Director, computed the proper rent due as $212.00.

It was unclear what precipitated this proceeding, since the parties appeared to have developed a stable, though perhaps not totally settled, relationship as of June, 1991. We urged the parties, both at the commencement and the conclusion of the trial, to settle the matter on terms consistent with our rulings regarding the rights of remainers in *In re Fonseca,* 110 B.R. 191, 194–96 (Bankr.E.D.Pa.1990); and *In re Adams,* 94 B.R. 838, 845–49 (Bankr.E.D.Pa. 1989). Given the posture of this case, application of the principles of these decisions and the entry of the discharge order in this case would permit the CHA to proceed against the Debtor in state court immediately if it wished, but would require it to name the Debtor as a defendant in an action to obtain possession of the Unit from her. We also suggested that the knotty issue of whether the Debtor could avoid or had been discharged from the rent delinquency accumulated by the Mother could be resolved by the CHA's agreeing to eliminate any delinquency of the Debtor's family for back rent upon payment to the CHA of the $965 held by the Debtor's counsel. This resolution appeared acceptable to the Debtor, but not to the CHA, which insisted upon a stipulation that it could immediately go forward to evict the Debtor by "an appropriate proceeding." The later phrase apparently included a claim of a right to use the prior judgment obtained against the Mother to evict the Debtor, which would be contrary to the principles set forth in *Fonseca* and *Adams.* Another impediment to settlement was the fact that the Unit was, apparently, according to pertinent federal Regulations, overcrowded, and the parties' counsel were involved in a separate federal lawsuit challenging overcrowding in the CHA's units. The CHA was not prepared to give the Debtor and Marlene two separate units, which the Debtor suggested might be necessary to avoid overcrowding, if the Debtor retained the Unit in good standing.

Believing that settlement was nevertheless possible, since the Debtor and Marlene were quite content to simply retain their "overcrowded Unit," we indicated a willingness to hold off making any decision in the proceeding until the parties had thoroughly exhausted efforts at settlement over the next week, through July 3, 1991.

On July 3, 1991, the Debtor requested and was granted a further opportunity to attempt to settle the matter through July 16, 1991, and then through July 17, 1991. However, the latter date occasioned a further request for an extension into August, 1991. We were unwilling to abide the parties' extended settlement process any further.

## C. DISCUSSION

### 1. THIS COURT MUST RAISE THE ISSUE OF ITS JURISDICTION TO DECIDE THIS MATTER SUA SPONTE, IF NECESSARY.

Both before and after the trial, we questioned of our jurisdiction to hear this matter in light of two factors: (1) The Debtor's discharge had eliminated the application of the automatic stay. *See* 11 U.S.C. § 362(c)(2)(C); and (2) The failure of the trustee in the Debtor's case, co-Plaintiff LAWRENCE T. PHELAN, ESQUIRE ("the Trustee"), to assume any leasehold interest in the Unit had apparently represented an abandonment of any interest of the estate in the Unit.

The CHA did not plead this court's lack of subject-matter jurisdiction to decide this proceeding in its Answer to the Complaint. However, it is clear that the presence of subject-matter jurisdiction is an issue which we are obliged to raise *sua sponte* at any time in the course of any matter, and we may proceed to decision only if such jurisdiction is present. *See In re Greenley Energy Holdings of PA, Inc.,* 110 B.R. 173, 179–80 (Bankr.E.D.Pa.1990). It is particularly appropriate for a bankruptcy court to question its jurisdiction to decide a matter which arises after the climax of a bankruptcy case, *i.e.,* confirmation of a Chapter 11 plan or the discharge of an individual Chapter 7 or Chapter 13 debtor. *Id.* at 180–82. Moreover, the CHA did raise the issue of our jurisdiction to hear this matter in opposing the Debtor's motion to reopen the case.

2. RELIEF FROM THE AUTOMATIC STAY AS TO CERTAIN PROPERTY OF THE DEBTOR GENERALLY ELIMINATES BANKRUPTCY COURT JURISDICTION OVER CONTESTED MATTERS RELATING TO THAT PROPERTY.

■ One pertinent issue which has been the subject of some dispute among various bankruptcy courts is whether a bankruptcy court retains jurisdiction to adjudicate rights to property of the debtor after the court has granted a creditor relief from the automatic stay to exercise all of its rights to that property under applicable non-bankruptcy law in another forum.

Some courts have held that a stay termination immediately ends bankruptcy-court jurisdiction. For example, the court in *In re Hood,* 92 B.R. 648, 655–56 (Bankr. E.D.Va.1988), *aff'd,* 92 B.R. 656 (E.D.Va. 1988), refused to revoke a foreclosure sale which took place after relief from the stay was granted. The *Hood* court concluded that, after relief from the stay was granted as to certain property, that property was removed from the estate, as though it were abandoned, and could not be recovered by the estate. *Id.*

Some courts hold that generally a stay termination ends bankruptcy-court jurisdiction, but maintain that jurisdiction may continue to be exercised if the property in question is utilized in a reorganization plan. For example, the court in *In re Incor,* 113 B.R. 212, 215 (D.Md.1990), refused to hear a dispute concerning accounts receivable, which the bankruptcy court had granted a secured creditor relief from the automatic stay to allow it to collect. The court held that, when the stay was lifted, the accounts receivable were abandoned by the estate and were no longer subject to bankruptcy court jurisdiction. *Id.* at 214–15. However, it suggested that the result would be different if the proceeds from accounts receivable were being utilized to fund a Chapter 11 plan. *Id.* at 216.

Other bankruptcy courts believe that, at least under certain circumstances, they retain jurisdiction over a debtor's property after the stay is terminated as to that property, even if utilization of the property in question is not contemplated in a plan. For example, in *In re Ridgemont Apartment Associates,* 105 B.R. 738, 741 (Bankr. N.D.Ga.1989), the court held that it had jurisdiction to order the recovery of certain payments from a receiver in reference to a property, even though the stay had been terminated as to that property. *Id.* The court rejected the idea that the termination of the stay automatically caused abandonment of the property. *Id.* Rather, the court held that it retained jurisdiction, albeit "subject to being changed," as long as the assets in issue were still technically in the control of a trustee. *Id.*

Finally, some courts assert even wider jurisdictional powers, almost rejecting entirely the significance of relief from the stay. These courts separate the debtor from the "estate" and assert that any dispute revolving around the debtor is a "related" matter subject to bankruptcy court adjudication even if the particular property in question is no longer part of the estate. *See In re Foster,* 105 B.R. 746, 748 (Bankr. M.D.Ga.1989). In *Foster,* after granting a creditor relief from a stay to pursue a foreclosure sale, the court then heard and ruled on a claim to set aside the foreclosure sale on procedural grounds. *Id.* The court held that, as long as the debtor continued to have a redemption claim to the property, the bankruptcy court maintained jurisdiction over that property. *Id. Accord, In re Tome,* 113 B.R. 626, 632 (Bankr.C.D.Cal. 1990).

This court has addressed the issue of its continuing jurisdiction over the property of the debtor after granting a creditor relief from the automatic stay in reference to that property in two Chapter 13 cases, *In re Fricker,* 113 B.R. 856, 864 (Bankr. E.D.Pa.1990); and *In re Young,* 76 B.R. 504, 506–07 (Bankr.E.D.Pa.1987). In *Young,* we refused to accept jurisdiction of a proceeding instituted by the debtor's heirs to challenge the validity of post-stay-relief proceedings against the debtor's former property. In *Fricker,* 113 B.R. at 864, we stated that

while we believe that granting relief from the stay as to certain property normally diminishes significantly the estate's interest in that property, as a result of which a bankruptcy court, in most circumstances, should decline to intervene with post-stay-relief proceedings, we do not believe that granting relief from the stay deprives a bankruptcy court of jurisdiction over that property.

In that case, we nevertheless proceeded to exercise our jurisdiction to invalidate a sheriff's sale of the debtors' property because

relief from the stay was granted ... only *after* this proceeding was instituted. In fact, the relief was granted only as a trade-off for indulging the Debtors' desire to delay this proceeding by taking a considerable period to file an Amended Complaint.

*Id.*

3. A FAILURE TO ASSUME A LEASEHOLD INTEREST EFFECTS AN ABANDONMENT OF THAT INTEREST FROM THE DEBTOR'S ESTATE, WHICH GENERALLY DEPRIVES A BANKRUPTCY COURT OF JURISDICTION REGARDING SUBSEQUENT DISPUTES ABOUT THAT PROPERTY.

■ Passing to the issue of the status of the Debtor's alleged leasehold interest in the Unit, we begin by quoting 11 U.S.C. § 365(d)(1), which provides that

in a case under chapter 7 ... if the trustee does not assume or reject an executory contract or unexpired lease of residential real property ... within 60 days after the order for relief ... then such contract or lease is deemed rejected.

The Trustee has joined this proceeding as a named plaintiff. However, the Trustee clearly did not act to assume the Debtor's interest in the Unit within 60 days from the bankruptcy filing.

In *In re Reed,* 94 B.R. 48, 52 (Bankr. E.D.Pa.1988), Judge Fox held that the failure of a Chapter 7 trustee to assume a public housing lease amounted to an abandonment of the interest of the debtor's estate in the lease. He further held that

such an abandonment required dismissal of an aspect of a case seeking a monetary recovery for damages to the debtor's leasehold. *Id.*

However, in *Adams, supra,* while agreeing that the failure of a Chapter 13 debtor to timely and formally assume a public-housing lease resulted in an abandonment of such a lease by the debtor's estate, 94 B.R. at 849–50, we nevertheless exercised jurisdiction over a dispute regarding that debtor's alleged rights under her lease as a remainer. We held that, although the debtor's interest in the lease was abandoned by the estate, it was merely abandoned to the debtor herself. *Accord, In re Szymecki,* 87 B.R. 14, 15 (Bankr.W.D.Pa.1988); *In re Sudler,* 71 B.R. 780, 787 (Bankr.E.D.Pa. 1987); and *In re Knight,* 8 B.R. 925, 929 (Bankr.D.Md.1981). It was clear that the preservation of her leasehold was the centerpiece of the *Adams* debtor's confirmed plan. 94 B.R. at 849. Also, the plan was confirmed and hence the leasehold interest was abandoned, *see* 11 U.S.C. § 365(d)(4), *after* the proceeding seeking to establish the debtor's leasehold rights was filed. *Id.* at 840, 849. Thus, as in *Fricker,* the action which arguably eliminated the debtor's leasehold interest from the scope of the court's jurisdiction occurred while the litigation involving that very interest was ongoing. As a result, we implicitly decided, in *Adams,* to exercise our jurisdiction over the matter in dispute.

4. A DISCHARGE OR CLOSING OF A CASE GENERALLY ELIMINATES THE POWER OF A BANKRUPTCY COURT TO HEAR A PROCEEDING RELATED TO THAT CASE.

■ One final consideration deserves our attention. That is whether the entry of a discharge in, or the closing of, a bankruptcy case eliminates bankruptcy court jurisdiction over litigation involving a debtor. In a prior decision, *In re Cuascut,* 91 B.R. 13, 15 (Bankr.E.D.Pa.1988), we focused on whether this court retained jurisdiction over a proceeding charging contempt of an order of this court by the debtor after a discharge had been entered in a Chapter 7

case and her case had been closed. In *Cuascut,* we permitted a creditor to reopen the debtor's bankruptcy case and litigate the contempt motion. *Id.* Although we stated that "[o]nce a chapter 7 case is closed, the [bankruptcy] court generally retains jurisdiction over only disputes which clearly involve property of the estate," we concluded that the exercise of jurisdiction was necessary "to prevent the perpetration of possible violations of the Bankruptcy Code and injustice in this matter." *Id.*

Also relevant are cases which consider the potential power of a bankruptcy court to hear and determine an adversary proceeding after the main case to which the proceeding is attached has been dismissed. *See In re Smith,* 866 F.2d 576, 579–80 (3d Cir.1989); and *In re Stardust Inn, Inc.,* 70 B.R. 888, 890–91 (Bankr.E.D.Pa.1987). Both of these cases stand for the principle that, although a dismissal of a main bankruptcy case should normally result in the dismissal of all related outstanding adversary proceedings, this outcome is not mandatory. *Id.* Instead, they held that, as in deciding whether to exercise its pendant and ancillary jurisdiction, a bankruptcy court should determine whether to accept jurisdiction after carefully evaluating three elements: (1) judicial economy; (2) fairness and convenience to the litigants; and (3) the degree of difficulty of the issues involved. *Smith,* 576 F.2d at 580; and *Stardust Inn,* 70 B.R. at 891.

5. THIS COURT DECLINES TO EXERCISE ITS JURISDICTION OVER THE INSTANT PROCEEDING.

■ The underlying bankruptcy case of the instant Debtor presents a situation where a discharge has been entered, relief from the automatic stay concerning the property which is subject to the dispute in issue has been granted, *and* any leasehold interest of the Debtor in the Unit has been abandoned to her. It also involves a proceeding concerning which the main case to which it is related has been closed. We are of course aware that the underlying main case was reopened on May 7, 1991. However, the principal reason why we so unhesitatingly reopened the case, over the objec-

tion of the CHA, was in order that the Debtor could add an omitted creditor. The Debtor provided the added creditor with the notice required under L.B.Rule 1009.-1(b) on May 8, 1991. The 60–day period in which the added creditor was obliged to have asserted any objections to the Debtor's claims to exemptions and her right to discharge from its debt have passed without incident. Therefore, but for the presence of this proceeding, the Debtor's case would have already been re-closed.

If a discharge is entered in a main case to which a proceeding is related, if relief from the stay is granted as to the property in issue, if a leasehold interest in issue has been abandoned to the debtor, *OR* if the underlying main bankruptcy case is closed, the general rule is that the bankruptcy court will not exercise its jurisdiction. When *all four* of these conditions are present, as here, the difficulties in obtaining exceptions from the denial of exercise of bankruptcy court jurisdiction are heightened, if not overwhelmed.

Moreover, the factors which would possibly justify an exception from the general rules suggesting the absence of bankruptcy court subject-matter jurisdiction are not present or weak in the instant factual setting. In contrast to *Fricker* and *Adams,* the instant proceeding was not instituted while the automatic stay or the Debtor's potential right to formally assume the lease in issue were intact. The proceeding in issue was instituted well after the Debtor's discharge had been entered and long after the 60–day § 365(d)(1) assumption period had expired, as a sort of afterthought.

Unlike *Cuascut,* there was no precipitating event by the CHA's which promised to effect injustice upon the Debtor if this court stayed its hand. Instead, after about a year of great uncertainty about the nature of the parties' future relationship, they appeared to have settled into peaceful co-existence prior to the filing of this case. There is no basis on which we could conclude that the state court is apt to disregard or differ from the conclusions in which we reached in *Fonseca,* 110 B.R. at 194–96; and *Adams, supra,* 94 B.R. at

845–47. We have every reason to believe that the CHA will respect the Debtor's rights as a remainer, and will institute an action to obtain possession of that Unit against the Debtor herself, in state court, before attempting to dispossess her. And, if the CHA should refuse to follow these directives, the Debtor could possibly invoke federal jurisdiction in a separate action in the district court to enforce her rights, albeit not through the medium of the bankruptcy court.

Finally, the elements recited in *Smith* and *Stardust Inn* do not tip in the Debtor's favor. While we expended our energies in hearing this proceeding on June 25, 1991, this matter is hardly a stranger to the CCP Court. That Court has been the site of disputed proceedings between the parties relating to the instant controversy. In fact, the possible need to ascertain the significance of the denial of the Debtor's motion to intervene in the case brought against the Mother by the CHA in the CCP Court demands the particular attention of the CCP Court, a judge of whom entered that order.

There is no particular fairness or convenience in requiring parties situated in Delaware County to come to Philadelphia to try this matter, rather than litigating it in the home county.

The difficulty of the issues is not a factor. Our decisions in *Fonseca* and *Adams* presented no great difficulty to us. On the other hand, the Opinions in those cases are in the public domain, equally available to state court judges.

## D. CONCLUSION

In sum, the weight of the factors militating against our acceptance of jurisdiction to hear this matter is indeed overwhelming. Accordingly, we will *sua sponte* issue an Order directing its dismissal without prejudice, for want of subject-matter jurisdiction to hear it. We will also order that the underlying bankruptcy case must be reclosed forthwith, as the addition of a new creditor to the Debtor's scheduled list has already been effected without incident adverse to the Debtor.