**In re CARY METAL PRODUCTS, INC., an Illinois corporation, Debtor.**

**ZERAND–BERNAL GROUP, INC., formerly known as Zerand Corporation, Plaintiff,**

v.

**Ronald L. COX and Beth Ann Cox, his wife, Rockwell International Corp. and Rockwell Graphic Systems, Inc., Defendants.**

**No. 93 C 1946.**

United States District Court, N.D. Illinois, E.D.

Aug. 24, 1993.

Patrice Anne Powers, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for Zerand–Bernal Group, Inc., plaintiff.

David S. Curry, N. Neville Reid, Mayer, Brown & Platt, Chicago, IL, for Rockwell Intern. Corp.

## MEMORANDUM AND ORDER

MORAN, Chief Judge.

On July 1, 1992, plaintiff Zerand–Bernal Group, Inc. (Zerand) commenced an adversary proceeding against defendants Ronald Cox, Beth Ann Cox (Cox defendants) and Rockwell International Corporation and Rockwell Graphics Systems, Inc. (collectively referred to as Rockwell) in the United States Bankruptcy Court, Northern District of Illinois (No. 92 A 901). In its complaint plaintiff requested the bankruptcy court to enjoin the Cox defendants from prosecuting a product liability claim against Zerand. On or about July 31, 1992, Rockwell filed a motion to dismiss plaintiff's complaint, contending that the bankruptcy court lacked subject matter jurisdiction.[1] On February 22, 1993, the bankruptcy court granted Rockwell's motion to dismiss, 152 B.R. 927. Now before this court is Zerand's appeal of the bankruptcy court's order and judgment. For the reasons stated below, the bankruptcy court's ruling is confirmed.

## FACTS

On July 26, 1985, Cary Metal Products, Inc. (the debtor) filed a voluntary petition for reorganization under Chapter 11 (No. 85 B 9480). On December 23, 1985, the Bankruptcy Court for the Northern District of Illinois approved the sale of a substantial portion of the debtor's assets to Zerand. On January 22, 1987, the bankruptcy court confirmed the debtor's liquidating plan of reorganization.

On August 5, 1991, the Cox defendants commenced a product liability action in the United States District Court for the Western District of Pennsylvania for injuries allegedly suffered by Ronald Cox because of defect in a product manufactured by the debtor. Zerand was named as a defendant in that action on the basis of successor liability, a concept recognized by Pennsylvania law. In addition, Rockwell intends to seek indemnification from Zerand for any attendant liability as a successor to the debtor. On July 1, 1992, Zerand filed an adversary complaint against the Rockwell and Cox defendants. In its complaint Zerand asked the bankruptcy court to enjoin Ronald and Beth Ann Cox from further prosecuting the product liability action. The complaint also asked that the bankruptcy court enjoin Rockwell from seeking indemnification against Zerand for any lia-

---

1. On or about July 22, 1992, the Cox defendants filed an answer and affirmative defenses in response to Zerand's complaint.

bility it suffered as a result of the Pennsylvania action. It seeks, in short, the benefit of its bargain. Rockwell moved for dismissal, claiming that the bankruptcy court lacked subject matter jurisdiction and could not grant the relief it had purportedly agreed to provide when it approved the sale of assets to Zerand.

The dispute before the bankruptcy court, and now before this court, involves the language used in the documents for the sale of the debtor's assets to Zerand. The relevant language of the sale agreement provides that the bankruptcy court is to reserve jurisdiction to enjoin any product liability claims existing prior to the sale closing or arising after, but relating to sales made by the debtor prior to the sale closing. In addition, the joint plan of reorganization provides in part for the bankruptcy court to retain exclusive jurisdiction after confirmation to enforce the sale agreement.

The bankruptcy court granted Rockwell's motion on February 22, 1993. The court concluded that it lacked subject matter jurisdiction over the pending complaint. On March 4, 1993, Zerand filed an appeal of the bankruptcy court's order (No. 93 C 1946).

### DISCUSSION

In its response to Rockwell's motion to dismiss, Zerand argued that the bankruptcy court had jurisdiction over the subject matter of the complaint for several reasons:

1) 28 U.S.C. § 1334, because the issues raised in the adversary complaint "arise under" and are "related to" a case under title 11;

2) 28 U.S.C. §§ 157(b)(2)(N) and (O) because the adversary proceeding is a "core" proceeding;

3) the doctrine of ancillary jurisdiction; and

4) 11 U.S.C. § 105 which authorizes bankruptcy courts to carry out the provisions of title 11.

The bankruptcy court held that because the proceeding did not "arise under" title 11

and did not "relate to" the underlying bankruptcy case, it did not have subject matter jurisdiction to entertain Zerand's complaint. This court now addresses each of Zerand's arguments, supporting its position that the bankruptcy court had subject matter jurisdiction to adjudicate its complaint.

### A. *Jurisdiction Pursuant to § 1334*

Section 1334 provides that district courts shall have original but not exclusive jurisdiction over all title 11 civil proceedings, and states in relevant part:

Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C. § 1334(b). Local Rule 2.33(A) refers any such action to the bankruptcy judge for resolution. Zerand claims that the adversary proceeding both "arises under" and "relates to" a Chapter 11 case.

### 1. *"Arises under" Jurisdiction*

■ In order for § 1334 "arising under" jurisdiction to apply, the cause of action in question must be "created or determined by a statutory provision of title 11." *In re Spaulding & Co.*, 131 B.R. 84, 88 (N.D.Ill. 1990). There are three possible sources of "arising under" jurisdiction applicable in this case: (1) the reservation of jurisdiction provisions of the sales order and confirmation order; (2) section 1142(b) of the Bankruptcy Code (governing post-confirmation jurisdiction); and (3) section 363 (governing "free and clear" sales of assets).

■ Zerand's first argument, that the bankruptcy court reserved jurisdiction to hear the present proceeding, is without merit. As noted by the bankruptcy court, a court's confirmation order by itself cannot confer jurisdiction. Jurisdiction must be independently established under the bankruptcy code. *See e.g. In re Lawndale Steel Co, Inc.*, 1991 WL 242977 (Bankr. N.D.Ill. May 2, 1991). Furthermore, nei-

ther § 1142 or § 363 support "arising under" jurisdiction in this case.[2] As noted by Judge Sonderby in her order, the purpose of bankruptcy administration is to have a quick, efficient resolution of claims to allow the debtor's business to either continue or be salvaged in a timely manner, while protecting the interests of the creditors. *Zerand v. Cox, et al.*, 152 B.R. 927 (Bankr. N.D.Ill.1993) *(referring to In re Grabill,* 976 F.2d 1126 (7th Cir.1992)). On the one hand, it is important for a bankruptcy court to retain jurisdiction so that it can monitor property transferred in accordance with the terms of the plan of reorganization; however, it is also important to end the reorganization process at some point so that the participants can go about their business without constant bankruptcy court supervision or approval. Courts, finding a middle ground to these conflicting interests, exercise post-confirmation jurisdiction up to the point at which the creditor's action will not affect the administration of the plan and prohibit the adjudication of complaints when the action has no impact on the estate or the recovery of its creditors. *Pettibone Corporation v. Easley*, 935 F.2d 120, 122 (7th Cir.1991) (holding that once the plan of reorganization is confirmed the debtor can continue its business without further supervision, and the creditor is then without the protection of the bankruptcy court); *Matter of Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir.1987). Thus, the critical consideration, when determining whether or not the bankruptcy court has jurisdiction, is whether the outcome of the pending complaint would affect the estate. Here, plaintiff's action would in no way impact the administration of the estate. Zerand brought this action over five years after the debtor's liquidation plan was confirmed and seven years after the bankrupt-

cy court authorized the sale of the debtor's assets to Zerand. No assets remain in the estate and the creditors' claims have long been resolved.

Plaintiff maintains that the subject matter of its complaint—whether or not it purchased the debtor's assets free and clear of future liability—poses an issue under title 11 and, as in *In re Korhumel, Industries, Inc.*, 103 B.R. 917, 924 (N.D.Ill. 1989), requires a finding of "arising under" jurisdiction. This court agrees with plaintiff in that its complaint raises an issue under title 11; however, even under the *Korhumel* rationale, that is not enough to establish jurisdiction. As noted above, in order for the bankruptcy court to retain jurisdiction there must be some impact on the administration of the plan. And, in fact, the court in *Korhumel* noted that fact. *Korhumel*, 103 B.R. at 924. Zerand argues that there would be an impact on the estate since its inability to obtain injunctive relief against Rockwell and the Cox defendants could result in an effort to rescind the sales agreement and to allow it to assert an indemnification claim against the debtor's estate. This court agrees with Judge Sonderby and finds that such an extremely tenuous connection to the estate is insufficient to establish jurisdiction. It is difficult to conceive that, even if the agreement theoretically could be rescinded and/or an indemnification claim made, there would be an impact on an estate that was closed over five years ago. Not only is an indemnification claim against Rockwell a mere possibility, but such an action, between two unrelated parties, could itself have no effect on the estate.[3]

A bankruptcy proceeding would have little meaning if, every time a claim that related to the prior property of the estate

---

**2.** Section 1142(b) of the Bankruptcy Code provides:

The Court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan.

Section 363 governs the sale of the debtor's assets "free and clear" of all claims.

**3.** In addition, we point out that Ronald Cox did not suffer his injury until August 1989, almost four years after the entry of the sale order. Thus, the product liability claim had not arisen at the time the assets were sold or the plan was completed.

arose, there would be the risk that the confirmed plan would fall apart. We conclude that there is no "arising under" jurisdiction.

### 2. "Related to" Jurisdiction

■ The question of whether the bankruptcy court has jurisdiction under the "related to" provision of § 1334 is a much easier one. A bankruptcy court has jurisdiction to hear disputes between a debtor's creditors or non-debtor parties under the "related to" provision, if those disputes "involve property of the estate or if resolving two creditors' intramural squabble will affect the recovery of some other creditor." *Matter of Kubly*, 818 F.2d 643, 645 (7th Cir.1987). The Seventh Circuit has limited this type of jurisdiction and has stated that the "[o]verlap between the bankrupt's affairs and another dispute is insufficient unless its resolution also affects the bankrupt's estate or the allocation of its assets among creditors." *Homes Insurance Co. v. Cooper & Cooper, Ltd.*, 889 F.2d 746, 749 (7th Cir.1989).

■ As discussed in section 1 and as noted by Judge Sonderby, the debtor in this case relinquished any interest in its property when the assets were sold to Zerand. Again, the reorganization plan has been completed and there are no assets remaining in the estate. The bankruptcy court lacks the requisite jurisdiction to hear Zerand's complaint since the action will have no impact on the estate or any other creditor's interest.[4]

### B. Core Jurisdiction

■ Plaintiff argues that the bankruptcy court had jurisdiction under 28 U.S.C. § 157(b)(2) because the adversary proceeding is a "core" proceeding. Judge Sonderby held that § 157(b) does not provide an independent source of jurisdiction, but merely allocates jurisdiction created by § 1334 between core and non-core proceedings. We agree. Section 157 merely creates a statutory distinction between core and non-core proceedings, thereby "restricting the power of bankruptcy courts to adjudicate the latter." *In re Spaulding*, 131 B.R. at 89 (*quoting In re Wood*, 825 F.2d 90, 93 (5th Cir.1987)). Section 157 does not enlarge the scope of the bankruptcy court's jurisdiction under § 1334. *Id.* at 90. Because there is no subject matter jurisdiction under § 1334, there is no jurisdictional basis to hear Zerand's complaint under § 157.[5]

### C. Ancillary Jurisdiction

■ Absent an independent jurisdictional basis, a bankruptcy court may have ancillary jurisdiction to hear a case over those claims which are logically dependent and factually similar to the trustees' claims. *Wieboldt Stores, Inc. v. Schottenstein*, 111 B.R. 162, 166 (N.D.Ill.1990). However, if the underlying main bankruptcy case is closed, then the general rule is that the bankruptcy court will not exercise ancillary jurisdiction. *In re Anderson*, 129 B.R. 44, 50 (Bankr.E.D.Pa.1991). Ancillary jurisdiction is applied only in unusual circumstances and is strictly limited to cases

**4.** Plaintiff argues that its action will impact the estate since it may assert an action for indemnity or for rescission of the sale if this court does not enjoin the Pennsylvania action. This court agrees with Judge Sonderby in that a "mere allegation of a potential claim or action is insufficient to bestow jurisdiction." *Zerand*, 152 B.R. at 934. And, as discussed in section 1, the plan has been fully completed and there would be no conceivable impact on the "amount of property available for distribution or the allocation of property among creditors." *Id.*

**5.** Plaintiff relies heavily on *In re Paris Industries Corporation*, 132 B.R. 504 (D.Me.1991). Although we need not address each of plaintiff's arguments, we note that in *In re Paris*, the court stated that jurisdiction was conferred to the

district courts through § 1334(b), and that it is under § 157 that the district courts refer those proceedings that are considered to be "core" to the bankruptcy judges. 132 B.R. at 507.

Again, it is critical that the resolution of Zerand's complaint would have no effect on the creditors of the estate. That was not the situation in *In re Paris* where, at the time of the adjudication of the purchaser's request for an injunction, no plan of reorganization had been filed with the court. As noted in *Xonics*, an unrelated dispute among creditors is not a "core" proceeding under § 157(b)(2) since it is the "relation of dispute to estate, and not of party to estate, that establishes jurisdiction." 813 F.2d at 131.

**465**

where the non-bankruptcy forum cannot provide adequate relief or where other equitable factors require the bankruptcy court to exercise ancillary jurisdiction. *Local Loan Co. v. Hunt,* 292 U.S. 234, 239, 54 S.Ct. 695, 697, 78 L.Ed. 1230 (1934); *In re Courbat,* 274 F.Supp. 1, 3 (N.D.N.Y.1967) (stating that ancillary jurisdiction is denied where there is no showing that the party has inadequate remedy in a non-bankruptcy court); *In re Anderson,* 129 B.R. at 50 (stating that the bankruptcy court should consider judicial economy, fairness and convenience to the parties, and the degree of difficulty of issues involved when determining if it should exercise ancillary jurisdiction).

 The bankruptcy court was correct in denying ancillary jurisdiction in this case. The estate was closed years ago and Zerand's claims would have no impact on the creditors' assets. Furthermore, the issues raised by Zerand concern the interpretation of a sale agreement. This court has every reason to believe that the Pennsylvania district court is well versed in such matters and is competent to deal with the interpretation of an agreement. *See e.g. Local Loan,* 292 U.S. at 241, 54 S.Ct. at 697–98; *In re Anderson,* 129 B.R. at 51. Perhaps Pennsylvania law will recognize the plan's insulation of Zerand from successor liability. If so, the non-bankruptcy court in this case can provide Zerand with the relief it seeks. Ancillary jurisdiction does not, however, confer general jurisdiction here to enjoin the enforcement of claims in other courts absent unusual and compelling circumstances. Since those circumstances do not exist in this case, there was no need for the bankruptcy court to exercise ancillary jurisdiction.

**D.** *The Bankruptcy Court's Authority Under § 105*

Section 105 does not provide a jurisdictional basis, but provides the "scope and forms of relief the court may order in an action in which it has jurisdiction." *In re American Hardwoods, Inc.,* 885 F.2d 621, 624 (9th Cir.1989). Because the bankruptcy court does not have subject matter jurisdiction to hear Zerand's complaint, § 105 does not apply here and no further discussion is warranted.

### *CONCLUSION*

The bankruptcy court lacked subject matter jurisdiction to entertain Zerand's complaint. This court confirms the bankruptcy court's order and judgment.