In re **VICTORY MARKETS INC.**, Debtor.

In re **Dunco Realty & Equipment Corp.**, Debtor.

In re **VM Custom Fixtures, Inc.**, Debtor.

In re **Food King, Inc.**, Debtor.

In re **Norwich Recycling Corp.**, Debtor.

In re **Geddes St. Plaza Assoc., Inc.**, Debtor.

**Victory Markets, Inc. and Victory Markets, LLC, Plaintiffs,**

v.

**NYS Unemployment Insurance, Unemployment Insurance Division, Department of Labor, State of New York, Defendant.**

**Bankruptcy Nos. 95–63366, 95–63367, 95–63368, 95–63369, 95–63370, 95–63371. Adversary No. 00–80050A.**

United States Bankruptcy Court, N.D. New York.

Oct. 2, 2000.

---

Menter, Rudin & Trivelpiece (Jeffrey Dove, of counsel), Syracuse, NY, for debtor.

Steven Koton, Assistant Attorney General, New York City, for Defendant.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

Currently before the Court is a motion by the New York State Unemployment Insurance Division of the Department of Labor ("the Department") to dismiss the adversary proceeding commenced by Victory Markets, Inc. ("VMI") and Victory Markets, LLC ("LLC") on March 23, 2000, for lack of subject matter jurisdiction, pursuant to Rule 7012(b) of the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P.") and Rule 12(b)(1) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."). The Department filed its motion to dismiss on April 24, 2000, supported by a memorandum of law. VMI then filed its memorandum of law in opposition to the Department's motion on May 18, 2000. Subsequently, oral argument was heard in Utica, New York, and the matter was submitted for decision on May 23, 2000.

### JURISDICTIONAL STATEMENT

The Court has jurisdiction over this proceeding to determine whether subject matter jurisdiction exists pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and (b).

### FINDINGS OF FACT

VMI filed for protection under Chapter 11 of the U.S. Bankruptcy Code, 11 U.S.C. §§ 101–1330 ("the Code") on September 20, 1995. The Department asserts that it filed an administrative expense claim on August 5, 1996 in the sum of $373,822.60

representing VMI's post-petition unemployment insurance tax obligation. Subsequently, VMI's First Amended Liquidating Plan of Reorganization ("the Plan") was confirmed by an Order of this Court on September 27, 1996 ("Confirmation Order"). Under the Plan, Victory Markets, LLC was formed and took by assignment all assets and liabilities of Victory Markets, Inc. Essentially, the LLC was formed as the vehicle to oversee and implement the terms of the Plan. The Department contends that under the Plan, LLC paid the Department the sum of $698,148.16 in full satisfaction of the Department's administrative expense claim and the balance of VMI's 1996 unemployment tax obligation, plus interest. According to the Department, $97,184.24 in post-petition interest was waived upon the Department's receipt of LLC's payment and that sum was returned to LLC. The Department maintains that pursuant to New York Labor Law, subsidiary contributions in the amount of $88,698.42 were credited to the Department's general account.[1] The Department further asserts that the remainder of LLC's payment was credited to the Department's general account as well, rather than to VMI's employer account, because of VMI's delinquency in paying their post-petition unemployment tax obligation.

Under the Plan, many of VMI's stores were sold individually to 17 separate independent investors, many of whom were former VMI employees. *See* Department's Memo, at 4–5. According to the Department, the 17 VMI transferees ("New Owners") assumed a portion of VMI's experience rating for determining unemployment insurance tax premiums under New York Labor Law.[2] The Department avers that it notified the New Owners of the partial transfer of VMI's experience rating, that such rating "resulted in a negative account balance which met the statutory threshold for imposing the maximum tax rates," and that if the New Owners made voluntary payments their tax rate could be reduced. Moreover, the Department asserts that none of the New Owners made such voluntary payments to reduce their tax rating nor sought to challenge or object to such experience rating transfer under New York Labor Law. In their complaint ("Complaint") VMI and LLC contend that the Department's partial transfer of VMI's unemployment insurance tax rate and the method of crediting the amounts previously paid by VMI (or LLC) violates the terms of the Plan. Complaint, at ¶ 20.

## ARGUMENTS

The Department argues that the Bankruptcy Court lacks subject matter jurisdiction to hear the adversary proceeding because the dispute turns solely on matters

---

1. Prior to its January 1, 1999 amendment, New York Labor Law stated that, "If on any computation date the commissioner finds that the balance of the general account, after the debiting of negative balances of employers' accounts, is less than one hundred twenty million dollars, then every employer shall pay a subsidiary contribution with respect to wages paid in the four calendar quarters immediately subsequent to the computation date. Such subsidiary contribution shall be paid in addition to any other amounts otherwise payable under this article, and shall be assessed and collected in the same manner as

the contributions prescribed by section five hundred seventy. The proceeds of the subsidiary contribution shall be deposited in the fund and credited to the general account." N.Y. LAB. Law § 577.2 (McKinney 2000).

2. Note that the Court herein is not considering the issue of the sum or propriety of the New Owners' unemployment insurance tax experience rating, rather; the narrow issue before the Court is whether it has subject matter jurisdiction to hear VMI's claim.

involving non-debtor parties, to wit, the New Owners and the Department. According to the Department's memorandum of law, the Bankruptcy Court has well grounded subject matter jurisdiction in determining tax liabilities relating to a debtor in bankruptcy, but that the New Owners' unemployment insurance tax experience rating bears no consequence on either VMI, LLC or VMI's Chapter 11 Plan. The Department asserts that VMI's unemployment insurance tax obligation was satisfied, in full, with its October 1996 subsidiary tax and general account payment. Thus, any subsequent unemployment insurance tax premiums due for any of the former VMI companies became the responsibility of the New Owners.

Furthermore, the Department contends that the Court is enjoined from granting the relief requested by VMI under the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341. The TIA provides that, "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under state law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The Department argues that such a State forum exists, to wit, the New York administrative law process, including the Unemployment Insurance Appeal Board with the New York State Supreme Court, Appellate Division, serving as an appellate tribunal. The Department further contends that the New Owners chose not to seek any form of relief in these forums.

On the narrow issue presently before this Court, namely whether subject matter jurisdiction lies with the Bankruptcy Court, VMI argues that under the terms of the Confirmation Order the Court retained exclusive jurisdiction "to determine any and all adversary proceedings initiated by the Debtors...[and]...to determine matters concerning state...taxes." *See* Confirmation Order, § 45 and VMI's Affirmation in Opposition to the Department's Motion to Dismiss ("VMI's Affirmation"), at 2. VMI's position is that the Plan constitutes a contract with something similar to a choice of forum clause whereby VMI and its creditors agreed to litigate any and all tax-related liability issues before this Court.

In the same vein, VMI asserts that the adversary proceeding requires the Court's interpretation of the "successor liability" clause of VMI's confirmed Chapter 11 plan[3]. VMI argues that the Plan absolves VMI's successors from any claim which arose prior to the Order confirming VMI's Plan. VMI maintains that the New Owners are successors to VMI within the meaning of the Plan. Because the experience rating arose prior to the confirmation of the Plan, it is VMI's position that the experience rating is tantamount to a "liability" and that the Department's transfer of the experience rating controverts the VMI Plan.

Alternatively, VMI argues that the experience rating transferred to the New Owners had a negative indirect impact on the success of VMI's Chapter 11 Plan and, therefore, the adversary proceeding should

---

**3.** The Plan states, *inter alia,* "Upon confirmation, the Plan shall be binding upon and inure to the benefit of the Debtors and their respective successors and assigns and the holders of Claims and Equity Interests and their respective successors and assigns, whether or not they voted to accept the Plan. The rights afforded in the Plan and the treatment of all Claims and Equity Interests therein shall be in exchange for and in complete satisfaction of all Claims and Equity Interests of any nature whatsoever, known or unknown, including any interest accrued or expenses incurred on such Claims from and after the Petition Date, against any of the Debtors, the Debtors in Possession, or any of their estates, assets, priorities or interests in property." *See* Plan, § X(B).

properly be heard in Bankruptcy Court. According to VMI, the New Owners acquired the former VMI stores by giving VMI a number of "Asset Purchase Notes" ("cash flow notes" or "net operating income notes"). *See* Complaint, ¶ 5. The New Owner payments to VMI under these notes are proportional to the month-to-month available cash flow of the transferred stores. *See* Complaint ¶¶ 5–6. It is VMI's contention that the higher unemployment insurance tax premiums due, because of the higher transferred experience rating, reduces the New Owner cash flow, thus, reducing the amount of the payments payable to VMI, which in turn, reduces the amount available for distribution to VMI's creditors under the Plan. *See* Complaint, ¶ 21.

### DISCUSSION

Fed.R.Bankr.P. 7012(b) states that "Rule 12(b)-(h) [of the] Fed.R.Civ.P. applies in adversary proceedings." Fed. R.Civ.P. 12(b)(1) provides in pertinent part that "lack of jurisdiction over the subject matter" is a defense to a pleading. When considering a Fed.R.Civ.P. 12(b)(1) motion, "the complaint is viewed liberally,...the court accepts as true all material facts alleged in the complaint" and the burden is on the plaintiff to demonstrate propriety of the forum. *See 19 Court Street Assoc., LLC v. Resolution Trust Corp. (In re 19 Court Street Assoc., LLC)*, 190 B.R. 983, 995 (Bankr.S.D.N.Y.1996).

VMI relies on 28 U.S.C. § 1334 and 28 U.S.C. §§ 157(b)(1) & (2)(A), (L) and (O) to support its assertion that the Bankruptcy Court has subject matter jurisdiction to hear this adversary proceeding. Section 1334 states, *inter alia,* that District Courts are given "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or ***arising in*** or ***related to*** cases under title 11." 28 U.S.C. § 1334(b)

(emphasis added). Furthermore, the District Courts are authorized to refer all such proceedings under title 11 to the bankruptcy judges for the district. *See* 28 U.S.C. § 157(a). "Bankruptcy judges may hear and determine...all core proceedings ***arising under*** title 11, or arising in a case under title 11 ...[which]...include but are not limited to matters concerning the administration of the estate...confirmation of plans...[or] other proceedings affecting the liquidation of the assets of the estate..." 28 U.S.C. §§ 157(b)(1) & (2)(A), (L) and (O)(emphasis added). *See also,* VMI's Affirmation, at 2–3.

### A. "Arising in" or "Arising under" jurisdiction

Jurisdiction either "arising in" or "arising under" title 11 " 'encompass the matters that are at the core of the jurisdiction of the bankruptcy courts, and depend upon the application or construction of bankruptcy law as expressed in title 11.' " *Peterson v. 610 W. 142 Owners Corp. (In re 610 W. 142 Owners Corp.),* 219 B.R. 363, 366 (Bankr.S.D.N.Y 1998) *quoting Silverman v. General Ry. Signal Co. (In re Leco Enters., Inc.),* 144 B.R. 244, 248 (S.D.N.Y. 1992) *citing Consulting Actuarial Partners, L.P. v. Descap Planning, Inc. (In re Consulting Actuarial Partners, L.P.),* 72 B.R. 821, 828 (Bankr.S.D.N.Y.1987). Generally, " 'arising under' jurisdiction covers any cause of action created by Title 11...[and] 'arising in' jurisdiction encompasses... 'matters not based on any right expressly created by Title 11, but that would have no existence outside of the bankruptcy.' " *Glinka v. Abraham and Rose Co. Ltd.,* 199 B.R. 484, 490 (D.Vt. 1996) *quoting Silverman,* 144 B.R. at 248.

The Second Circuit has taken the position "that '[t]he relevant analysis [of "arising in" or "arising under" jurisdiction] is whether the nature of [the] adversary

proceeding, rather than the state['s]...basis for the claim, falls within the core of federal bankruptcy power.'" *Peterson,* 219 B.R. at 367, *quoting Hassett v. Banc-Ohio Nat'l Bank (In re CIS Corp.),* 172 B.R. 748, 756 (S.D.N.Y.1994), *citing Gulf States Exploration, Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.),* 896 F.2d 1384, 1389 (2d Cir.1990).

■ The nature of VMI's claim relates solely to a state agency's application of a state regulation against a non-debtor third party, that is to say the Department of Labor's application of New York Labor Law against the New Owners [4]. Nothing in the Code permits a bankruptcy court to exercise jurisdiction over a state agency's enforcement of state law against a non-debtor third party, particularly where the nexus between the state's action and the bankrupt estate is ethereal, at best. Even assuming, arguendo, that VMI's claim did pose an issue under title 11, this alone does not establish jurisdiction. *See Zerand–Bernal Group, Inc. v. Cox (In re Cary Metal Products, Inc.),* 158 B.R. 459, 462 (N.D.Ill.1993), *aff'd,* 23 F.3d 159 (7th Cir.1994). Without any cognizable impact on the administration of VMI's Plan, the Court lacks jurisdiction and VMI has failed to meet its burden of demonstrating the propriety of the forum. *See id; see also, 19 Court Street Assoc., LLC,* 190 B.R. at 995.

### B. *"Related To" Jurisdiction*

■ The Second Circuit's standard for determining "related to" jurisdiction is generally a less narrow one than that for "arising in" or "arising under" jurisdiction. *See Peterson,* 219 B.R. at 367. "The test for determining whether litigation has a significant connection with a pending bankruptcy proceeding is whether its outcome might have any conceivable effect" on the bankrupt estate. *Publicker Industries, Inc. v. U.S. (In re Cuyahoga Equip. Corp.),* 980 F.2d 110, 114 (2d Cir.1992). If the "conceivable effect" test is met, then the adversary proceeding in question falls within "related to" jurisdiction of the bankruptcy court. *See id.; see also Peterson,* 219 B.R. at 367. A proceeding between non-debtors has a "conceivable effect" on the bankrupt estate where the dispute would "affect how much property is available for distribution to the creditors of a bankruptcy estate or the allocation of property among such creditors, or if the outcome could alter the debtor's rights and liabilities." *Geron v. Schulman (In re Manshul Construction Corp.),* 225 B.R. 41, 45 (Bankr.S.D.N.Y.1998).

■ However, the scope of a bankruptcy court's "related to" jurisdiction is further limited where non-debtor third parties are involved. Because an endless array of cases would "relate to" any single bankruptcy administration, the Second Circuit has limited "related to" jurisdiction to "significant" relation and not simply a remote connection. *Turner v. Ermiger (In re Burneice Turner),* 724 F.2d 338, 341 (2d Cir.1983); *see also Celotex Corp. v. Edwards,* 514 U.S. 300, 307, 115 S.Ct. 1493, 1499, 131 L.Ed.2d 403 (1995); *Publicker,* 980 F.2d at 114; *Holland Industries, Inc. v. U.S. (In re Holland Industries, Inc.),* 103 B.R. 461, 468 (Bankr. S.D.N.Y.1989) (holding that the relationship of the case to the bankruptcy estate, and its impact thereupon, must be more than remote); *19 Court Street Assoc., LLC,* 190 B.R. at 996 (ruling that there

---

4. New York Labor Law states, in pertinent part that when "an employer... transfers his...business in whole or in part, the transferee shall take over and continue the employer's account, including its balance and all other aspects of its experience [rating]..." N.Y. LAB. LAW § 581.4 (McKinney 2000).

must be "a direct and significant connection between the contract and the debtor's estate"); *Bentley v. Sharp (In re Anthony M. Bentley)*, 47 B.R. 266, 268 (Bankr. S.D.N.Y.1985). Furthermore, even though "[a] debtor will always be faced with a multitude of circumstances which can conceivably affect its estate and the ability to fund a plan..." and "[t]he desires of every Chapter 11 debtor are affected by a myriad of external indirect effects created by the circumstances in which it operates...their impact on a debtor's attempt to reorganize does not afford the bankruptcy courts with jurisdiction to determine the dispute merely because of that impact." *Holland Industries, Inc.*, 103 B.R. at 469, 466 (Bankr.S.D.N.Y.1989).

Other circuits have employed an alternative test for determining "related to" jurisdiction by quantifying whether the outcome of the adversary proceeding would "alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *In re Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984).

The Supreme Court has found both tests equally reliable and judicially sound "and noted that 'whichever test is used...bankruptcy courts have no jurisdiction over proceedings that have no effect on the debtor.'" *Peterson*, 219 B.R. at 367, *quoting Celotex Corp.*, 514 U.S. at 308 n. 6, 115 S.Ct. at 1499 n. 6 (1995).

VMI filed this adversary proceeding three and a half years after confirmation of the Plan and nearly two years after the New Owners were notified of the experience rating transfer. The Department's claim against VMI has long since been satisfied and the New Owners have expressed no interest in objecting to the higher experience rating. Based on a liberal reading of the pleadings, the question remains as to whether VMI has met its burden of demonstrating propriety of the forum under "related to" jurisdiction. *See 19 Court Street Assoc., LLC*, 190 B.R. at 995. The Court notes that VMI's allegation that the higher unemployment insurance experience tax rating impacts adversely on the administration of the Plan, however remote, arguably raises a question of fact sufficient to survive a motion pursuant to Fed.R.Civ.P. 12(b)(1). Nonetheless, the Court need not reach a conclusion with respect to this question as the Court's ability to retain jurisdiction to hear VMI's claim is subject to the limitations imposed by the TIA, as discussed more fully, *infra*.

## C. The Tax Injunction Act

The Tax Injunction Act states in its entirety, "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The purpose and effect of TIA was to "limit the ability of a Federal court to interfere precipitously with the operation of State tax...programs whenever there was a 'plain, speedy, and efficient remedy' available in a State court." S. REP. 94–204, at 17 (1975).

The issue of the bankruptcy court's jurisdiction as subject to the TIA was addressed by Chief District Court Judge Thomas Griesa in the Southern District of New York in *McCrory v. The State of Ohio. See McCrory Corp. v. State of Ohio*, 212 B.R. 229 (S.D.N.Y.1997). The plaintiff in *McCrory*, a Chapter 11 debtor-in-possession, commenced an adversary proceeding in bankruptcy court seeking to enjoin several state tax entities from assessing unpaid taxes against non-debtor parties,

more specifically McCrory officers and employees. *Id.* at 234. The court acknowledged that assessing state tax penalties against the McCrory employees might have an effect on the administration of McCrory's confirmed Chapter 11 plan but that the TIA and the availability of a state court remedy to the non-debtor parties prevented the bankruptcy court from asserting jurisdiction. *Id.* Judge Griesa opined that even though the tax assessments "would have a negative impact upon the bankruptcy proceedings" it would be "straining the limits...[of the TIA]...to say that the requirement of a plain, speedy and efficient remedy means that...[the Debtor]...must have the right to intervene and argue about matters such as the effect on bankruptcy." *Id.* at 233.

■ The corporate debtor in McCrory argued that if the State were allowed to proceed against the non-debtor parties in a state adjudicatory setting that McCrory itself, the debtor, would not have standing to intervene to assert any rights it might have in that state setting. *Id.* at 232. As Judge Griesa pointed out:

> If there is a question about the amount of tax due...the assessed individual can surely raise this issue. If McCrory wishes to raise a kind of equitable defense about interference with the bankruptcy reorganization procedure, this is something which a state court might be willing to hear, but no legal doctrine has been cited indicating that a state court is legally obligated to hear or give weight to such a defense.

*McCrory Corp.*, 212 B.R. at 232. Similarly, this Court agrees that a claim by VMI, if such a claim exists, must be asserted in a state tribunal and the bankruptcy court has no jurisdiction to force the hand of the Department. VMI's counsel contends, by way of oral argument, that the bankruptcy court has the authority to enjoin the State from transferring VMI's experience rating to the New Owners, or as he puts it, the court has the authority to "tell the State that they've got to treat them [the New Owners] like they are new employers." Statement by Jeffrey A. Dove, Esq., Attorney for VMI, Hearing on Department's Motion to Dismiss Adversary Complaint, Victory Markets, Inc. v. NYS Unemployment Insurance, Unemployment Insurance Division, Department of Labor, State of New York, (Bankr.N.D.N.Y)(Adv.Pro. No. 00–80050A), May 23, 2000. However, "if there is a reasonable recourse to court by that assessed party, it would seem clear that there is a sufficient remedy within the meaning of the statute, and a federal court is prohibited from enjoining the state process." *McCrory Corp.* at 233. Because such recourse does, in fact, exist, the bankruptcy court has no jurisdiction over VMI's adversary claim.[5]

## D. Retention of Jurisdiction

■ VMI's argument that the bankruptcy court has reserved jurisdiction to hear its claim is without merit. *See Zerand–Bernal Group, Inc.*, 158 B.R. at 462. Simply put, "[t]he terms of the confirmation order cannot confer jurisdiction over a matter as to which subject matter jurisdiction would otherwise be lacking." *Bentley*, 47 B.R. at 268; *see also Zerand–Bernal Group, Inc.*, 158 B.R. at 462 (noting that "the court's confirmation order by itself cannot confer jurisdiction...[j]urisdiction must be independently established under the bankruptcy code."). Thus, VMI's assertion that this Court retained jurisdiction by the terms of the Confirmation Order is rejected.

5. *See* N.Y. Lab. Law §§ 620–624 (McKinney 2000).

### E. Successor Tax Liability

In *U.S.A. v. Huckabee Auto Co.*, the corporate debtor was, as in the instant case, operating under a confirmed Chapter 11 reorganization plan when the Internal Revenue Service assessed a penalty against the non-debtor officers of the corporate debtor. *See U.S.A. v. Huckabee Auto Co.*, 783 F.2d 1546, 1547 (11th Cir. 1986). *See also, Brandt–Airflex Corp. v. Long Island Trust Co., N.A., (In re Brandt–Airflex Corp.)*, 843 F.2d 90 (2d Cir.1988) (expressly applying *Huckabee*). Although the corporate debtor had made timely payment of the IRS's bankruptcy claim for social security and employment withholding taxes, the Internal Revenue Code assesses such penalties against individual corporate officers.[6] *Id.* at 1547. The corporate debtor argued, much akin to VMI's argument, that subject matter jurisdiction lies in the bankruptcy court because if the individual officers were ordered to pay a penalty, the funds would come from corporate coffers, thus having a negative effect on the debtors' plan of reorganization by further limiting the funds available to creditors. *Id.* The Court of Appeals for the 11th Circuit summarily rejected this argument by agreeing with the district court that "a challenge to the...[IRS]...penalty is outside the scope of the bankruptcy court's jurisdiction." *Id.* at 1548. In concluding its *per curiam* decision, the Court held that,

> "The jurisdiction of the bankruptcy courts encompasses determinations of the tax liabilities of debtors who file petitions for relief under the bankruptcy laws. It does not, however, extend to the separate liabilities of taxpayers who are not debtors...[i]t is therefore irrelevant that the penalty...will adversely affect the corporate debtor's reorganization. Accordingly, ...the separate tax liabilities of the...[non-debtors]...were outside the scope of the bankruptcy court's jurisdiction."

*Id.* at 1549.

The decision in *Huckabee* elucidates the precept that tax liabilities of parties who

---

**6.** The Court is not persuaded that it should assert jurisdiction by VMI's inference that the Department misapplied LLC's payment in satisfaction of VMI's 1996 tax obligation, thus creating what it calls a "negative balance" resulting in a higher experience rating for the New Owners. VMI is mischaracterizing its experience rating as an "account" which might be considered an asset or liability in the context of a Chapter 11 plan. The parties do not dispute that VMI's unemployment tax obligation to the Department has been satisfied in full. Accordingly, what was transferred to the New Owners was the experience rating itself, and not a liability of VMI to the Department. This mischaracterization along with the suggestion that the funds were misapplied gives the faulty impression that the Department is seeking payment for a debt predating the confirmation order when in reality the Department is merely formulating the New Owners tax rate based on VMI's tax experience. *See, Ravenna Industries, Inc. v. Ohio Bureau of Workers' Compensation*, 51 B.R. 496, 500–501 (Bankr.N.D.Ohio 1985) ("the higher rate levied has no relation to the filing of the bankruptcy by the debtors or the prepetition debts, dischargeable or not. The higher rate is related to the debtors' prepetition experience...[and]...[a]lthough the bankruptcy courts have the power to determine tax liability...there is nothing in the history of bankruptcy reorganization legislation to support the theory that Congress intended to set the federal courts up as super-assessment tribunals over state taxing agencies.") *quoting Arkansas Corp. Commission v. Thompson*, 313 U.S. 132, 145, 61 S.Ct. 888, 892, 85 L.Ed. 1244 (1941). *See generally*, N.Y. LAB. LAW § 581.4 (McKinney 2000) (The Department's general "account shall be credited with contributions which are paid into the fund more than sixty days after the due date..."). Finally, there was apparently nothing to prevent the New Owners from asserting in the appropriate state forum that they were wrongfully penalized due to the Department's alleged misapplication of VMI's payment.

are not debtors under a confirmed plan are irrelevant, bear nothing more than a remote and tenuous consequence on the debtor's plan and, most relevant, are outside the scope of the bankruptcy court's jurisdiction.[7]

By virtue of the foregoing, it is hereby

ORDERED, that the adversary proceeding commenced by VMI, and all motions presently pending therein, be dismissed due to lack of subject matter jurisdiction.

---

7. It should be noted that *Huckabee* addresses a federal claim while the instant case deals with a state tax issue. However, it is VMI's position, that VMI does, in fact, have an identical adverse claim against the federal government but chose not to name the federal government as a party to this adversary proceeding "...because the results herein will dictate the [VMI] claim, if any, against the federal government." Complaint, at 4 n. 1.